Brassard, J.
INTRODUCTION
Plaintiffs, Emanuel and Barbara Miliaras (collectively, the “Miliarases”), commenced this action to appeal the decision of the Winchester Board of Appeals (“the Board"). The Miliarases seek to overturn the Board’s denial of the Miliarases’ request for a permit to renovate a carriage house on their property, to provide a living facility in which to educate their autistic son and two other mentally challenged adults. Further, the Miliarases challenge the validity of the Board’s construction of the Winchester by-law as applied to the carriage house. The Miliarases also seek a declaration under G.L.c. 231A as to the validity of the education exemption under G.L.c. 40A, §3 and Winchester by-law section 4.4(6).
A jury-waived trial was conducted from July 17 to July 18, 1997. Four witnesses were called and 25 exhibits were entered into evidence. Based upon all the credible evidence, this Court makes the following findings of fact.
FINDINGS OF FACT
1. The Miliarases own and reside at the property at 12-14 Mount Pleasant Street, Winchester, on which property is a large carriage house. The Miliarases purchased the locus in 1962. No one has lived in the carriage house since that time. The property is situated in a RDB single-residence zoning district.
2. Stephen Miliaras (“Stephen”), the plaintiffs’ son, was born on July 20, 1960. Within a few years of his birth, Stephen’s behavior changed radically and his parents were concerned. Ultimately, after a number of years, Stephen was diagnosed as autistic. Beginning in 1964, Ms. Miliaras became an advocate to serve the needs of persons with mental challenges. She has continued in that advocacy to this time.
3. Until he was 22 years old, Stephen received various types of education including private schooling, tutoring, and attendance at schools in Waltham and Woburn. When he became 22 years old, his parents decided that he needed residential placement in the community. The Winchester Housing Authority at that time had no units for mentally challenged individuals. Stephen required 24-hour care because he was subject to seizures brought on by panic.
4. The Miliarases concluded that the carriage house would be ideal for this purpose because it was close to their home but Stephen would also have independence. Further, he could live there when his parents died.
5. A friend of the family, Rick Robbins (“Robbins"), was also an autistic person. When Robbins was turning 22, the Miliarases and Robbins’ mother concluded that he would be a good housemate for Stephen and that both would benefit from this relationship.
6. On or about September 6 and October 25, 1989, the Winchester Building Commissioner issued building permits to the Miliarases for the repair of an accessory structure, a carriage house, located on their property at 12-14 Mount Pleasant Street, Winchester, Massachusetts.
7. OnNovember8,1989, in response to aneighbor’s complaint, the Winchester Building Commissioner issued a cease and desist order, ordering the Miliarases to terminate repairs to the carriage house. The Miliarases filed a timely appeal.
8. On January 22, 1990, the Miliarases submitted to the Building Commissioner an application to modify the carriage house to provide a residential environment to teach, in accordance with current medical expertise, their adult autistic son the skills to live independently. The Miliarases requested relief under the Winchester Zoning By-Laws 1) as of right under sections 3.41,4.4(42), and 4.4(45), 2) by special permit under sections 3.34, 3.35; 3.42, 3.45, and 4.4(53), and 3) by variance under section 8.6. This application was filed with the Town Clerk on February 5, 1990.
9. On March 20, 1990, a public hearing was held. At the close of the hearing, the Board, by oral vote, denied all plaintiffs’ requests for relief. A written decision was filed with the Town Clerk on June 15, 1990. The Miliarases filed their appeal with this court on July 5, 1990.
10. After the denial of zoning relief, the Miliarases decided that they wished to continue Stephen’s edu *360 cation on their own property in Winchester. The Massachusetts Department of Mental Retardation (“DMR”) informed the Miliarases that if they took in a third person, DMR would find a vendor for a non-profit educational use at locus. Scott Lawson became that third person.
11. The Greater Lynn Mental Health Association (“GLMH”) was awarded the contract by DMR. Eventually, GLMH set up a program in the main home of the Miliarases on the first and second floors, and the Miliarases moved to the third floor. .This program existed from July 1991 until April 1992.
12. On or about August 15, 1991, Albert W. Bleau, Jr. (“Bleau"), in his capacity as Executive Director of GLMH, applied for a Building Permit and Zoning Compliance Certificate to renovate the same carriage house on the Miliarases’ property.
13. On August 26, 1991, the Town Building Commissioner refused to issue GLMH the building permit, claiming that to do so would violate the town zoning by-laws. Bleau appealed to the Board in accordance with G.L.c. 40A, §§8 and 15. Concurrently, Bleau filed an application for a special permit for the proposed use.
14. On or about January 2,1992, the Board granted a special permit to GLMH to renovate and utilize the Miliarases’ carriage house as a home for mentally handicapped persons.
15. Tragically, Stephen Miliaras died on January 5, 1992.
16. An abutter to the Miliarases’ property filed an appeal in the Superior Court. The decision of the Board was reversed by the Superior Court. The Superior Court ruling was reversed by the Appeals Court. On November 22, 1994, the Supreme Judicial Court reaffirmed the decision of the Winchester Zoning Board of Appeals.
17. On July 1, 1996, the Miliarases renewed their lease with GLMH on the carriage house for a five-year period running until June 30, 2001.
18. On December 23, 1996, GLMH applied for a building permit to convert the Miliarases’ carriage house to a group residence. This application was approved by the Town and the permit issued on January 8, 1997. GLMH is currently doing reconstruction on the carriage house.
19. The Town of Winchester did not allow the Miliarases to begin any renovations on the carriage house until the lease extension was signed with GLMH.
20. In 1989, the Winchester Housing Authority offered no group home for mentally challenged persons. At this time, the Winchester Housing Authority provides rental assistance to 15 persons who are mentally challenged.
21. At this time, any program of the Winchester Housing Authority available to the elderly is also available to mentally challenged persons. There has been no funding available for group homes.
22. In June 1990, the Board granted a permit to the owners of the property at 40 Wildwood Street for renovations to the adjacent carriage house. The renovations were performed and the owners now use the carriage house.
RULINGS OF LAW
The Miliarases claim that they are entitled to a constructive grant of relief because the Board failed to act within the proscribed time limits of G.L.c. 40A, §§9, 15. The record reflects, however, that the Board conducted a public hearing on March 20, 1990 and thereafter filed its written decision with the Town Clerk on June 15, 1990. Therefore, the Board complied with G.L.c. 40A, §§9, 15 requiring that it file its final decision within 90 days from the date of the public hearing.[2] This Court finds that the evidence does not support a constructive grant of relief.
Plaintiffs request that this Court make a declaration as to the validity of the Board’s construction of the Winchester Zoning By-Laws as applied to the carriage house. Plaintiffs further ask that this Court make a declaration under G.L.c. 231A as to the validity of the education exemption in G.L.c. 40A, §3 and Winchester by-law 4.4, §6, which permits lots in a particular zoning district to be used for a “school or other educational institution, provided the lot used for such purposes is owned or leased by the Commonwealth of Massachusetts or any of its agencies, subdivisions or bodies politic or by a religious sect or denomination, or by a non-profit educational corporation.”
Both the Superior Court and the Land Court generally have concurrent jurisdiction over petitions questioning the validity of municipal ordinances and by-laws. Woods v. Newton, 349 Mass. 373, 377 (1965). Actions brought under G.L.c. 231A in the Superior Court must involve an actual controversy. See G.L.c. 231A (giving the superior court authority to make binding declarations of right, duty, status and other legal relations sought provided an actual controversy exists). However, G.L.c. 240, §14A does not impose such a requirement upon the Land Court’s jurisdiction.[3] Here, the plaintiffs’ claims are questions more appropriately addressed under G.L.c. 240, §14A because the facts of this case do not present an actual controversy within the purview of G.L.c. 231A.
An actual controversy may be found to exist when landowners have been denied permits to make use of their land, or are threatened with enforcement proceedings while attempting to make a new use of their land. Woods v. Newton, 349 Mass. at 376. Plaintiffs initially sought and were denied a permit to renovate and reconstruct their carriage house in order to provide a dwelling in which to educate their adult autistic *361 son. However, GLMH has been issued a special permit and is currently renovating the Miliarases’ carriage house for use as an educational facility for the mentally challenged. The carriage house will be used for precisely the same purpose as the Miliarases initially sought in their petition.
The Miliarases, however, continue to ask this Court to declare that they have the right to operate such an educational facility as parents (or at least as a nonprofit educational organization recognized under the education exemption) of an autistic child. Thus, it appears that the Miliarases are concerned with the status of the carriage house should GLMH discontinue the program after the expiration of the lease in June, 2001. This concern essentially pertains to a possible future use of the newly renovated carriage house. The Miliarases’ request for relief is based upon a hypothetical situation not envisioned within the definition of an actual controversy for the purposes of G.L.c. 231 A. Unlike the Land Court, the Superior Court does not have jurisdiction under G.L.c. 240, §14A and G.L.c. 185, §1(j1/2) to make present declarations as to the validity of municipal ordinances and by-laws based upon possible future circumstances.
The plaintiffs also challenge the constitutionality of G.L.c. 40A, §3 and Winchester by-law 4.4, §6, alleging that both the statute and the by-law violate parents’ rights to educate their autistic child on their own premises. Because the Miliarases’ son, Stephen, has passed away, the plaintiffs no longer have standing to bring such a challenge.
“From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duly of passing upon the validity of the acts of a coordinate branch of the government.” Kaplan v. Bowker, 333 Mass. 455, 459 (1956). Because the Miliarases challenge the constitutionality of G.L.c. 40A, §3 and Winchester by-law 4.4, §6 as parents of an autistic child, they must demonstrate a legally cognizable injury resulting from the application of the statute and by-law. Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Board, 416 Mass. 635, 638 (1993); Massachusetts Assoc. of Ind. Ins. Aqents and Brokers, Inc. v. Commissioner of Insurance, 373 Mass. 290, 293 (1977). Unfortunately, due to the death of the plaintiffs’ son in 1992, plaintiffs can no longer demonstrate harm as parents of an autistic child.
In light of the lease to GLMH and the death of Stephen Miliaras, the plaintiffs do not have standing to appeal the decision of the Board with respect to the denial of a permit because the case does not present a sufficiently concrete matter for this Court to adjudicate.
In any event, the Miliarases are not entitled to use the carriage house as an educational institution as of right because the Miliarases are not one of the statutorily exempt entities authorized to use the land for such purposes under G.L.c. 40A, §3, and the Winchester by-law 4.4, §6. Additionally, the other provisions relied upon, Winchester by-law sections 3.41, 4.4(42), and 4.4(45), do not apply to the locus or its proposed use.
Further, G.L.c. 40A, §9 and Winchester by-law section 8.5 authorize the issuance of a special permit only for uses which are in harmony with the general purpose and intent of the ordinance or by-law. Wholly apart from whether the Board correctly exercised its discretion in denying a special permit, the evidence at trial does not support the conclusion that the special permit provisions the Miliarases relied upon for relief were applicable to the intended use of the locus. Therefore, the Miliarases do not qualify for a special permit under G.L.c. 40A, §9 or Winchester by-law section 8.5.
Finally, the Miliarases are not entitled to a variance. “[T]he burden is upon the person seeking a variance, and the board granting one, to produce evidence that each of the discrete statutory prerequisites has been met and that the variance is justified.” Kirkwood v. Board of Appeals of Rockport, 17 Mass.App.Ct. 423, 427 (1984). The Miliarases have failed to present evidence of any special circumstances affecting their land, pursuant to G.L.c. 40A, §10, that would entitle them to a variance.[4]
ORDER
For the foregoing reasons, it is hereby ORDERED that (1) the decision of the Winchester Zoning Board of Appeals did not exceed its authority, and (2) for the reasons stated in this decision, the court declines to grant the requested declaratory relief.

 To the extent that the 100-day provision of G.L.c. 40A §15 is applicable, there was no evidence that the plaintiffs complied with the procedural requirements specified in that section so that a constructive grant was effected.

 G.L.c.240, §14A provides in pertinent part:
The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated ... for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise set forth in such petition.

 The statutory requirements of G.L.c. 40A, §10, are:
(1) that owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and *362 especially affecting such land or structures but not affecting generally the zoning district in which it is located,
(2) a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and
(3) that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.