LUYEN HUU NGUYEN & others[1] vs. UNIVERSITY OF
MASSACHUSETTS.

No. 04-P-1653.

Suffolk. January 11, 2006. - May 11, 2006.

Present: DUFFLY, DREBEN, & CYPHER, JJ.

Further appellate review granted, 447 Mass. 1107 (2006).

*Employment,* Discrimination. *Anti-Discrimination Law,* Prima facie case,
Unfair educational practice. *Massachusetts Commission Against
Discrimination.*

A Superior Court judge did not err in dismissing a plaintiff's claims of unlaw-
ful discrimination under G. L. c. 151B, § 4(1) and (1C), and G. L. c. 151C,
where the plaintiff, although casting his claims in terms of discrimination
on the basis of national origin and age, alleged membership in a much
more narrowly defined class (i.e., South Vietnamese refugees to the United
States who were over the age of forty and adhered to certain political
beliefs) that was not protected by those statutes. [279-282]
A plaintiff was barred from pursuing in Superior Court a claim alleging
discrimination in violation of G. L. c. 151C, where the claim was not
encompassed in the allegations of the charges filed by the plaintiff with the
Massachusetts Commission Against Discrimination, or any investigation
that would reasonably be expected to grow out of such charges. [282]

CIVIL ACTION commenced in the Superior Court Department on
October 3, 2001.

A motion to dismiss was heard by *Janet L. Sanders,* J.

The case was submitted on briefs.

*James C. Duff,* of the District of Columbia, *Bradley S. Clan-
ton,* of Mississippi, *& Marlene J. Bidelman* for the plaintiffs.

*Michael P. Joyce* for the defendant.

DREBEN, J. This is an appeal from the allowance of the motion
of the William Joiner Center for the Study of War and Social
Consequences (Center), an academic center of the University of

[1] Bui Diem, Dinh Tu Nguyen, Sang P. Le, Ba Tuong Nguyen, Xuan M.
Tran, Nam Nhat Phan, Liem Thanh Nguyen, and Chuc V. Nguyen.

Massachusetts (University), to dismiss the plaintiff's second amended complaint (complaint) alleging age and national origin discrimination by the Center.[2,3] The motion was based both on Mass.R.Civ.P. 12(b)(1) and 12(b)(6), 365 Mass. 754 (1974). We affirm the dismissal primarily on the ground that the plaintiff, although casting his claims in terms of discrimination on the basis of national origin and age, alleges membership in a much more narrowly defined class that is not protected by our antidiscrimination employment or education statutes. See G. L. c. 151B, § 4(1), (1C); G. L. c. 151C. We also note that the group is accurately described by the motion judge as "a group defined essentially by its political beliefs."[4]

The complaint is in three counts: a claim of disparate treatment and a claim of disparate impact under G. L. c. 151B, and a claim of discrimination in violation of G. L. c. 151C. For purposes of the motion to dismiss, the complaint's allegations and reasonable inferences in favor of the plaintiff are taken to be true. *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 748-749 (2006). Specific factual allegations, however, may demonstrate that the plaintiff does not have a claim. See *Fabrizio* v. *Quincy*, 9 Mass. App. Ct. 733, 734 (1980). The specific allegations include the following facts.

In July, 1999, the Center was awarded a grant from the Rockefeller Foundation of New York to fund a fellowship program entitled "(Re)Constructing Identity and Place in the Vietnamese Diaspora." The fellows were to research such questions as

---

[2]The parties address at some length the question whether the proceedings before the Massachusetts Commission Against Discrimination (MCAD) precluded plaintiffs other than Luyen Huu Nguyen from bringing this action and whether the Center, by its answers to the plaintiffs' prior complaints, waived its claim that those plaintiffs are barred from bringing this action. We decline to reach the question of the status of the other plaintiffs. Our holding that Luyen Huu Nguyen — who, the Center concedes, filed the appropriate papers with the MCAD — is not a member of a protected class would also apply to the other named plaintiffs even if they were deemed to be proper parties. In most instances, we refer to the plaintiff in the singular.

[3]The plaintiff also alleges discrimination based on creed. See part 2, *infra*.

[4]The political nature of the plaintiff's claims was not the primary basis for the decision of the motion judge. Her decision rested on the fact that the plaintiff did not apply for the fellowship in question and would not be able to prove any particularized harm. We, however, rest our decision on other grounds. See *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993).

"how diverse constructions of Vietnamese identity and community as well as Vietnamese history, literature and culture are being shaped and reshaped in the contemporary post-war and post-refugee eras across generations throughout the diaspora." The fellows were to have temporary positions with faculty privileges.

At some length, the complaint sets forth the history of the waves of refugees who fled after the North of Vietnam overtook the South by force, and states that these refugees constitute the "Vietnamese Diaspora" that the fellowships were designed to study.

The plaintiff "was born on April 2, 1933, in the Republic of Vietnam (also known as South Vietnam),"[5] served as a captain in the South Vietnam Airborne Division, and was imprisoned for twenty-two years in North Vietnam. After being acquitted of the charges against him in 1991, the plaintiff immigrated to the United States and became a resident of Boston.[6]

In seeking to substantiate the claims of age and national origin discrimination, the complaint asserts that the Center adopted improper methods of advertising and selecting research fellows. The complaint lists the numerous publications in which the Center proposed to advertise the fellowships and claims the Center advertised in none of them, but only advertised in two obscure publications. The complaint also sets forth some of the requirements of the hiring guide of the University, including its policies against discrimination and the necessity to consult with the University's human resources department to insure that its hiring policies are followed and that the appropriate search and

---

[5]If we were to take judicial notice of historical facts, see *DeSautels, petitioner,* 1 Mass. App. Ct. 787, 791 (1974); Liacos, Brodin, & Avery, Massachusetts Evidence § 2.8.2, at 33-34 (7th ed. 1999), we would point out that in 1933 there was no Republic of Vietnam or South Vietnam, as this area of Southeast Asia was then part of French Indochina. For purposes of this opinion we will not cavil with the plaintiff on that score. We will assume that he was born in territory that became South Vietnam when the division into North and South Vietnam occurred in 1954 and that such birthplace gives rise to a claim of national origin. See note 9, *infra.* The country was unified in 1976.

[6]The other would-be plaintiffs were also well educated, and many were of high rank, including a former ambassador to the United States. They alleged that they were born in the Republic of Vietnam at various times between 1923 and 1942.

advertising are performed. According to the allegations, the Center failed to consult with the human resources department or comply with the hiring guide.

The notices given of the program are claimed to have been inadequate. On January 4, 2000, the Center mailed copies of a press release and a letter announcing the fellowships for the first time, but intentionally (according to the plaintiff) failed to inform the Vietnamese-American community, including the plaintiff, of the application requirements and process. Moreover, the application period was restricted to twenty-six days. The plaintiff "first learned that the Program had been established on or about April 11, 2000 — over two months after the application deadline — when he was given an envelope and a press release dated December 22, 1999, and mailed by the Center on January 4, 2000." Accordingly, the plaintiff could not and did not apply for a fellowship. He also did not apply for the academic years 2001-2002 and 2002-2003, because he believed that as a result of these legal proceedings, he would "have been discriminatorily rejected had [he] actually applied."

1. *Claims under G. L. c. 151B.* The disparate treatment claim was somewhat awkwardly described as follows: "The Plaintiffs were intentionally and discriminatorily excluded from and in the selection process and the Program because of their national origin and age."

Paragraphs 37 and 38 of the complaint, however, reveal that the group allegedly discriminated against is not defined solely by the protected classes of national origin or age:

> "37. The advertisement and method of publication were illusory, false and misleading, and in violation of University policy, and were intended to preclude and discriminate against Vietnamese-Americans over the age of 40 — specifically, the refugees from South Vietnam who personally experienced the Vietnamese Diaspora.

> "38. On May 12, 2000, Plaintiff Luyen Huu Nguyen first learned the Fellowships had been awarded on an unlawful and discriminatory basis. The Defendants selected candidates with insufficient qualifications, no experience of the Vietnamese Diaspora, and in some instances are

admitted agents of the Communist Party of the Socialist Republic of Vietnam (the unified North and South Vietnam), the very entity that caused the diaspora. Vietnamese-Americans over the age of 40 — South Vietnamese refugees with the most knowledge and experience regarding the Vietnamese Diaspora — were discriminated against in favor of two members of the Communist Party,[7] one Caucasian-American by birth under the age of 40, and one person of Vietnamese-American descent of approximately 25 years of age. The candidates selected were far less qualified than the Plaintiffs."

Thus, in addition to being over the age of forty and born in South Vietnam, members of the group allegedly discriminated against had the additional attributes of being refugees, and being refugees to the United States. That age and national origin did not comprise the class is evident from the fact that persons over the age of forty born in South Vietnam and now living in the unified Socialist Republic of Vietnam are not within the class. Surely, not all persons born in the South left, and indeed, the two persons described as agents of the Socialist Republic of Vietnam may have been born in South Vietnam. In view of the allegations in paragraph 38, they are probably over the age of forty. It is also evident that the class the plaintiff seeks to protect excludes a person over forty born in South Vietnam who lives in Australia, in Great Britain, or in any country other than the United States. Such a person would also be excluded from the class if he were not a refugee.

The real objection to the persons chosen as fellows by the Center appears to be that they were less qualified in the eyes of the plaintiff and were of a different political persuasion. That this was the thrust of the complaint is also apparent in the count alleging disparate impact. The two relevant paragraphs state:

"56. The Defendants awarded the Fellowships on the basis of an ideological employment test: Fellowships were available only to those who adhered or were sympathetic to the views of the Communist government of the Socialist Republic of Vietnam.

---

[7]In his brief, the plaintiff, apparently citing to paragraph 38 of the complaint, states that the two members of the Communist party who were chosen were residents and citizens of the Socialist Republic of Vietnam.

"57. The practical result of the application of this ideological test was to exclude all Vietnamese Americans over the age of 40 — virtually the entire Vietnamese Diaspora — the only group of people with personal knowledge and firsthand experience of the brutalities inflicted on the diaspora by the Communist North Vietnamese government and the dislocation and adaptation of the diaspora community."

The statutes relied on by the plaintiff are G. L. c. 151B, § 4(1), § 4(1C), and § 1(8), which, in pertinent part, are set forth in the margin.[8,9] They do not provide protection for political beliefs; they do not provide protection for refugees; and they do not provide protection for refugees who are American.

The plaintiff may be correct that South Vietnamese refugees would be more suited for the fellowships than the persons selected by the Center. That circumstance, however, does not entitle him to relief. Since he seeks protection as a member of a

---

[8]General Laws c. 151B, § 4(1), as appearing in St. 1989, c. 516, § 4, provides that it shall be an unlawful practice "[f]or an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orientation . . . or ancestry of any individual to refuse to hire or employ . . . or to discharge from employment such individual or to discriminate against such individual . . . unless based upon a bona fide occupational qualification."

General Laws c. 151B, § 4(1C), inserted by St. 1984, c. 266, § 6, provides that it shall be an unlawful practice "[f]or the commonwealth or any of its political subdivisions, by itself or its agent, because of the age of any individual, to refuse to hire or employ or to bar or discharge from employment such individual in compensation or in terms, conditions or privileges of employment unless pursuant to any other general or special law."

General Laws c. 151B, § 1(8), inserted by St. 1984, c. 266, § 4, provides that "[t]he term 'age' unless a different meaning clearly appears from the context, includes any duration of time since an individual's birth of greater than forty years."

[9]While national origin is not defined in the Massachusetts statutes or regulations, in the analogous 29 C.F.R. § 1606.1 (2005), the Equal Employment Opportunity Commission "defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group."

The complaint makes no claim of different ethnicity between persons born in territory of the former South Vietnam and those living in the present Socialist Republic of Vietnam (the unified North and South Vietnam).

class that is not protected by the statutes relied upon, see, e.g., *Espinoza* v. *Farah Mfg. Co.*, 414 U.S. 86 (1973) (citizenship not protected), he has not stated a claim under G. L. c. 151B, either for disparate treatment or disparate impact.

2. *Claims under G. L. c. 151C.* The third count of the complaint alleges discrimination by the Center in violation of G. L. c. 151C.[10] In addition to claiming discrimination on account of age and national origin,[11] the plaintiff alleges discrimination "on the basis of creed — in this instance, adherence to or sympathy for the creed of Communism."

This additional claim is barred because it was not made before the Massachusetts Commission Against Discrimination (MCAD). Cf. *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 584-585 (1994). Contrary to the plaintiff's contention, this claim was not encompassed by the allegations of the charges filed with the MCAD, or any investigation that would reasonably be expected to grow out of such charges. Cf. *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. 655, 672-673 (2000) (different portions of which were overruled by *Stonehill College* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. 549, 562 [2004]).

3. *Conclusion.* Since the plaintiff is not entitled to relief, the motion judge did not err in dismissing the complaint.[12]

*Judgment affirmed.*

---

[10]General Laws c. 151C, § 2(*d*), inserted by St. 1972, c. 175, § 1, relied on by the plaintiff, provides that it shall be an unfair educational practice for an educational institution "[t]o exclude, limit or otherwise discriminate against any person seeking admission to a program or course of study leading to a degree, beyond a bachelor's degree, because of race, religion, creed, color, age, sex or national origin."

[11]The age and national origin allegations are disposed of by our discussion of the plaintiff's c. 151B claims.

[12]Because of our decision, we need not reach other issues raised by the parties.