Nguyen *v.* William Joiner Center for the Study of War and Social Consequences.

LUYEN HUU NGUYEN & others[1] *vs.* WILLIAM JOINER CENTER
FOR THE STUDY OF WAR AND SOCIAL CONSEQUENCES
& another.[2]

Suffolk. November 8, 2007. - December 21, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Employment,* Discrimination. *Anti-Discrimination Law,* Prima facie case,
Employment, Unfair educational practice. *Practice, Civil,* Motion to dismiss.

In a civil action alleging that the defendants (a university and a research
center within the university) discriminated against the plaintiff in the
method by which the defendants solicited and selected fellowship recipients
for a certain research program, the judge properly dismissed the claim
brought pursuant to G. L. c. 151B for failure to state a claim upon which
relief could be granted, where the plaintiff's failure to apply for the fellow-
ship, an integral element of his prima facie claim of discrimination, could
not be excused either because of alleged defects in notice [296-297] or
because applying would have been futile [297-299].
A Superior Court judge properly dismissed, for failure to state a claim upon
which relief could be granted, a civil action brought pursuant to G. L.
c. 151C alleging that the defendants (a university and a research center
within the university) discriminated against the plaintiff in the method by
which the defendants solicited and selected fellowship recipients for a
certain research program, where persons accepted for fellowships were es-
sentially temporary employees having faculty privileges, and as such, they
could not be considered students or prospective students, as contemplated
by G. L. c. 151C, § 2 (*d*). [300-301]

CIVIL ACTION commenced in the Superior Court Department on
October 3, 2001.

A motion to dismiss was heard by *Janet L. Sanders*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Ceejaye E. Sneddon*, of Mississippi, for the plaintiffs.

*Michael P. Joyce* for the defendants.

---

[1]Bui Diem, Dinh Tu Nguyen, Sang P. Le, Ba Tuong Nguyen, Xuan M.
Tran, Nam Nhat Phan, Liem Thanh Nguyen, and Chuc V. Nguyen.

[2]University of Massachusetts at Boston.

GREANEY, J. This appeal, here on further appellate review, arises out of the dismissal of a complaint brought in the Superior Court by the plaintiff, Luyen Huu Nguyen,[3] under G. L. c. 151B and G. L. c. 151C, alleging discrimination in the method by which the defendants solicited and selected fellowship recipients for a program to promote research into the Vietnamese identity in the era following the Vietnam War. We affirm.

We summarize the relevant facts alleged in the most recent unverified amended complaint, followed by the procedural background of the case. See *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). We accept the allegations set forth in the complaint, as well as reasonable inferences therefrom, as true. We "do not accept legal conclusions cast in the form of factual allegations." *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000). See *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, judges "are not bound to accept as true a legal conclusion couched as a factual allegation").

In July, 1999, the defendants, the University of Massachusetts at Boston (university) and its academic center, the William Joiner Center for the Study of War and Social Consequences (center), received grant money from the Rockefeller Foundation of New York to establish research fellowships for the study of the so-called Vietnamese diaspora.[4] The Vietnamese diaspora began when the first wave of refugees fled South Vietnam as that country was overtaken by the communists from the North during the fall of Saigon in April, 1975. The research was to focus on, among other issues, the development of Vietnamese identity, history, literature, and culture in the postwar and post-refugee era across generations.

The fellows were to have temporary employment positions with "all the privileges of university faculty." The fellowship program provided that the fellowship positions would be "publicized widely," including notifying professional associa-

---

[3]As did the Appeals Court, we refer to a single plaintiff and do not address the issue of the status of others, but note that our conclusions herein would apply to them if they were found to be proper parties. See *Nguyen* v. *University of Mass.*, 66 Mass. App. Ct. 276, 277 n.2 (2006).

[4]The term "diaspora" refers to the breaking up and scattering of people outside their ancestral homelands.

tions and advertising in several specific publications. The program description stated that "[b]ilingual Vietnamese outreach materials will also be produced and disseminated to local and national Vietnamese community media outlets (newspapers, radio, cable television, websites)."

The plaintiff is over the age of forty and resides in Boston. He claims to have a "national origin" of South Vietnam.[5]

The university has a hiring guide and an affirmative action plan, both of which prohibit discrimination. The hiring guide requires that before filling temporary and grant-funded positions, the human resources department is to be consulted.

On January 4, 2000, the center distributed information to the public about the fellowships by way of a press release and a letter. The center also advertised the fellowship positions in two Vietnamese publications, Hop Luu and Van Hoc. The deadline for filing applications was January 31, 2000. The materials distributed by the center did not explain the application requirements or process, and when such information was later distributed in a poster, it was after the application deadline had passed. The center did not advertise in any publications other than Hop Luu and Van Hoc, and "outreach materials" were not disseminated to Vietnamese community media outlets. The center did not advertise in any Massachusetts-based Vietnamese-American daily newspaper, weekly newspaper, or magazine.

Four individuals were awarded the fellowship positions offered in 2000. Of these four, two individuals were "admitted agents of the Communist Party" who immigrated to the United States from North Vietnam; one was a "Caucasian-American by birth under the age of [forty]"; and "one [was a] person of Vietnamese American descent" under the age of forty. The four successful candidates were less qualified than the plaintiff.

The plaintiff learned of the fellowship opportunities on April 11, 2000, a little over two months after the application deadline. He informed the other plaintiffs, who had also not earlier learned of the fellowships. Fellowships were offered again in 2001 and 2002. None of the plaintiffs applied for any of these positions.

---

[5]All the plaintiffs are over the age of forty and claim a "national origin" of South Vietnam. They are all Vietnamese-American citizens or permanent residents of the United States.

With respect to the fellowships offered in 2001 and 2002, the plaintiff did not apply because of the legal proceedings he had commenced at the Massachusetts Commission Against Discrimination (commission), and because he "believed [he] would have been discriminatorily rejected had [he] actually applied."

The plaintiff further alleged that in awarding the fellowships in 2000, the center did not consult with the human resources department and failed to comply with any of the university's hiring guidelines or its affirmative action plan.

On October 27, 2000, the plaintiff filed a charge of discrimination with the commission, asserting a single count of employment discrimination under G. L. c. 151B, § 4. He moved to amend his charge to have it treated as a class action. The motion was denied. On September 12, 2001, the commission dismissed his complaint, finding a lack of probable cause.

In October, 2001, the plaintiffs filed in the Superior Court the complaint underlying this appeal. In the complaint, the plaintiffs stated their claims individually and as representatives of a proposed class. A Superior Court judge later denied the plaintiffs' motion to certify the case as a class action.

The complaint was thereafter amended. The amended complaint contains three counts: count one asserts a claim of discrimination by reason of disparate treatment under G. L. c. 151B; count two asserts a claim of discrimination by reason of disparate impact under G. L. c. 151B; and count three asserts a claim of discrimination in education under G. L. c. 151C. The complaint alleges that the actions of the defendants, "including the timing and methods of the advertisement, publication, and announcement of the [f]ellowships, and the evaluation and selection of the [f]ellowship recipients, were taken with the deliberate, improper, and illegal intent to exclude members of the Vietnamese-American community over the age of [forty], including the plaintiffs."

The defendants filed a motion to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974). The defendants argued that subject matter jurisdiction was lacking because all but one of the plaintiffs failed to file a charge of discrimination with the commission before filing the Superior Court complaint and because the claim of a violation of dis-

crimination in education under G. L. c. 151C was not included in the plaintiff's charge of discrimination filed with the commission. In addition, the defendants maintained that the counts under G. L. c. 151B failed to state a claim on which relief could be granted because the plaintiffs did not apply for the fellowship and because the plaintiffs' anticommunist views, as intertwined with a claim of discrimination predicated on national origin and age, are not protected under G. L. c. 151B. Finally, the defendants asserted that the claim under G. L. c. 151C should be dismissed because (1) that statute does not protect the "creed of communism," (2) the plaintiffs were not seeking admission to an educational institution as students, and (3) the plaintiffs were not seeking admission to a program leading to a degree.

The judge allowed the motion to dismiss, apparently pursuant to rule 12 (b) (6), as to both the G. L. c. 151B and G. L. c. 151C claims. She rested her decision primarily on the grounds that (a) notice of the positions did not permit an inference of discriminatory animus, and (b) because the plaintiffs never applied for a position, the defendants engaged in no adverse action with respect to them. Judgment entered, and the plaintiffs appealed. The Appeals Court affirmed the judgment of dismissal on a different basis, concluding that the plaintiff sought protection as a member of a class, defined essentially by political beliefs, that is not protected by G. L. c. 151B or G. L. c. 151C. *Nguyen* v. *University of Mass.*, 66 Mass. App. Ct. 276, 277, 281-282 (2006). We granted the plaintiff's application for further appellate review, and we now affirm for reasons other than those articulated by the Appeals Court.[6]

1. *Standard of review.* The purpose of a motion to dismiss for failure to state a claim pursuant to rule 12 (b) (6) "is to permit prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiff's claim is legally insufficient." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 748 (2006). In evaluating a motion to dismiss, we apply the principle that a complaint is sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

---

[6]We express no opinion on the basis, or the reasoning, that the Appeals Court used to affirm the judgment.

him to relief."[7] See *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957).

2. *Counts under G. L. c. 151B.* The plaintiff concedes, as he must, that he did not apply for the fellowship, an integral element of a prima facie claim of discrimination. See *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 135 n.5 (1976). He does not challenge the judge's ruling that this defect can be fatal to his discrimination claims under G. L. c. 151B. Rather, the plaintiff argues that the judge erred in concluding that his failure to apply to the fellowship program was not excused. The plaintiff contends that he did not have to apply for a fellowship at any time because, in 2000, he was not timely made aware of the fellowships because of the "illusory and haphazard advertisements and solicitations" for the positions, and because in 2001 and 2002, he had commenced legal proceedings against the defendants which, together with the earlier shortcomings in advertising, rendered any application futile. His claims under G. L. c. 151B thus raise a single issue: whether the plaintiff's failure to apply can be excused either because of alleged defects in notice or under the doctrine of futility.

a. With respect to the 2000 positions, the judge noted that notice was circulated and published twenty-six days before the deadline for applications. The judge correctly concluded that there is nothing about the method of notice that creates an inference of age discrimination or that provides a legally sufficient reason to conclude that the defendants intended to exclude the plaintiff, or any other potential Vietnamese applicant, from receiving notice. Any infirmities in the notices, therefore, do not create any permissible inference of discriminatory animus and do not excuse a failure to apply. See *Lockridge* v. *Trustees of the Univ. of Ark.*, 315 F.3d 1005, 1012 (8th Cir. 2003) (conclud-

---

[7]Reference is here made to *Eigerman* v. *Putnam Invs., Inc.*, *ante* 281, 286 n.7 (2007), where we discuss the new standard set forth in *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955 (2007) (*Bell Atlantic*), for the evaluation of allegations in a complaint when the complaint is challenged by a motion to dismiss under Fed. R. Civ. P. 12 (b) (6). Because the plaintiff's complaint preceded the *Bell Atlantic* decision, we do not consider whether we should adopt the *Bell Atlantic* standards or, if adopted, apply the standards to his claims.

ing that complainant's assertion that time period for applying for job opening was shorter than usual did not raise inference in reasonable mind of racial animus); *Chambers* v. *Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990) (explaining that formal application is excused only when job opening is not posted or advertised and either plaintiff had no knowledge of job otherwise or employer was aware of plaintiff's interest in job). Cf. *Williams* v. *Hevi-Duty Elec. Co.*, 819 F.2d 620, 629 (6th Cir.), cert. denied, 484 U.S. 970 (1987) (neither plaintiff's obvious desire to be hired nor his filing of first lawsuit against company, alleging that it refused to hire him due to his race, obligated company to waive written job application requirement).

b. With respect to the 2001 and 2002 positions, we need to discuss and apply the doctrine of futility. The applicable law derives from the United States Supreme Court's decision of *International Bhd. of Teamsters* v. *United States*, 431 U.S. 324 (1977) (*Teamsters*), and its progeny. In *Teamsters*, the United States commenced a pattern and practice action under the Civil Rights Act of 1964 for racial and ethnic discrimination against a motor freight carrier because it failed to promote or transfer members of the protected class to the position of a line driver. *Id.* at 328-329 & n.1. The Court concluded that there had been no error in finding that the government "had proved a system-wide pattern and practice of racial and ethnic discrimination on the part of the company." *Id.* at 362. The issue turned to the availability of remedies to individuals who had not applied for the position of line driver. *Id.* at 365. The Court rejected the employer's contention that a person who had not actually applied for the job of line driver could never be awarded relief. *Id.* The Court explained:

> "The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.

> "If an employer should announce his policy of discrimi-

298         450 Mass. 291 (2007)

Nguyen *v.* William Joiner Center for the Study of War and Social Consequences.

nation by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices — by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." (Footnote omitted.)

*Id.* at 365-366.

In the context of proving a discrimination claim under G. L. c. 151B, a per se prohibition of relief to a nonapplicant on the basis of futility would contravene the remedial purpose of the statute. Nonetheless, we agree with the judge that the plaintiff cannot, as matter of law, be excused under the holding of the *Teamsters* decision from the application requirement. The *Teamsters* case is readily distinguishable from this case because in *Teamsters* a pattern or practice of discrimination existed. *Id.* at 362. See *Brown* v. *Coach Stores, Inc.,* 163 F.3d 706, 711 (2d Cir. 1998) (court rejected individual plaintiff's "futile gesture" argument because "the leniency afforded individual plaintiffs in [*Teamsters*] hinged on an initial finding of a history of discrimination by the employer to the class of plaintiffs"). Even in the face of the alleged impediments in the advertising of the fellowship positions in 2000, the plaintiff has not alleged a consistently enforced pattern or practice of discrimination. See *Teamsters, supra* at 365. The judge correctly concluded that, for 2001 and 2002, the plaintiff failed to allege a sufficient causal link between any pattern or practice of the defendants and his failure to apply. The plaintiff's subjective belief that, in light of the backdrop of legal proceedings, he would have been rejected had he applied for a fellowship cannot excuse his failure to apply, because the fact that he filed a charge with the commission al-

leging discrimination does not by itself establish that discrimination existed. Cf. *Teamsters, supra* at 369-371.

We discern no other reason to support the plaintiff's claim. The fellowships were advertised. As a result, we do not have a situation where it would have been impossible to have learned of the position, see *Mauro* v. *Southern New England Telecommunications Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (excusing plaintiff's failure to apply because employer never posted positions and plaintiff had indicated that he wanted to be promoted to certain class of positions). Nor do we have a situation where the defendants possessed actual knowledge that the plaintiff wanted to apply. See *id.* There are also no allegations that the defendants ignored or actively discouraged the plaintiff or members of the plaintiff's purported class from filing applications. See *Lams* v. *General Waterworks Corp.*, 766 F.2d 386, 394 (8th Cir. 1985). No overt act of discrimination has been alleged. See *United States* v. *Gregory*, 871 F.2d 1239, 1241-1242 (4th Cir. 1989), cert. denied, 493 U.S. 1020 (1990) (excusing female plaintiff's failure to apply because employer explicitly stated women would not be hired).[8]

The claims under G. L. c. 151B were properly dismissed.

---

[8]Finally, we are not persuaded to reach a contrary result by the cases cited by the plaintiff. We do not consider the issue of futility to be an issue of fact in this case. See *Brown* v. *Coach Stores, Inc.*, 163 F.3d 706, 710-712 (2d Cir. 1998). Cf. *Krause* v. *Bobcat Co.*, 297 F. Supp. 2d 1212, 1219 (D.N.D. 2003); *Mayfield* v. *Meese*, 669 F. Supp. 1123, 1132 (D.D.C. 1987). Many of the other cases relied on by the plaintiff involve circumstances that are clearly distinguishable from what is alleged here. See *Winbush* v. *State*, 66 F.3d 1471, 1479-1481 (8th Cir. 1995) (concluding that plaintiffs were excused from applying for promotion where employer's promotion policy had been found to reflect "systematic and purposeful [racial] discriminat[ion]," and was occasioned by racial slurs and degrading treatment to only African-American employees); *Carmichael* v. *Birmingham Saw Works*, 738 F.2d 1126, 1133-1134 (11th Cir. 1984) (concluding, in failure to promote case, that plaintiff was not required to request specific job where plaintiff had no way of knowing about its availability because employer used no formal procedures for posting notice of available promotions); *Gifford* v. *Atchison, Topeka & Santa Fe Ry.*, 685 F.2d 1149, 1155 (9th Cir. 1982) (allegation that application for promotion, for job involving lifting of twenty-five pounds or more, would have been futile sufficient where plaintiff alleged that employer had previously refused to hire women for position, that employer had well-known policy of excluding women from job, and where State legislation prevented employer from hiring women in jobs requiring lifting). See also *Brown* v. *McLean*, 159 F.3d 898, 902-904 (4th Cir. 1998), cert. denied, 526 U.S. 1099 (1999) (affirming judgment in

3. *Count under G. L. c. 151C.* The third count of the complaint alleges discrimination in violation of G. L. c. 151C. The plaintiff clarifies that his claim is under G. L. c. 151C, § 2 (*d*), which provides:

> "It shall be an unfair educational practice for an educational institution: —
>
> "  . . .
>
> "(*d*) To exclude, limit or otherwise discriminate against any person seeking admission to a program or course of study leading to a degree, beyond a bachelor's degree, because of race, religion, creed, color, age, sex or national origin, or to so discriminate against any student admitted to such program or course of study in providing benefits, privileges and placement services."

The plaintiff maintains that he was discriminated against in connection with his "admission to a *program*" (emphasis added), *id.*, namely, the fellowship program, on the basis of creed, age, and national origin.

The plaintiff's argument does not consider the statute as a whole. See *Wolfe* v. *Gormally,* 440 Mass. 699, 704 (2004). The statute speaks to discrimination, in the setting of an educational institution, against students and prospective students. The statute prohibits discrimination against United States citizens seeking general admission to an educational institution, see G. L. c. 151C, § 2 (*a*), and against "any person seeking admission to a program or course of study leading to a degree" and "any student admitted to such program or course of study," G. L. c. 151C, § 2 (*d*). The distinction between the individuals referenced in § 2 (*d*) recognizes that, due to discrimination, a person "seeking admission" might not be granted admission and, therefore, will not become a "student admitted." When read in context, the use of "any person" in § 2 (*d*) refers to a prospective student, extend-

favor of employer on failure to rehire case because employee did not show that he applied for job or that doing so would have been futile); *Shannon* v. *Ford Motor Co.,* 72 F.3d 678, 682-684 (8th Cir. 1996) (affirming grant of summary judgment to employer on race discrimination claim, concluding that there was no evidence to excuse employee's acceptance of employer's removal of employee's name from promotion waiting list).

ing protection from discrimination to both students and prospective students. The persons accepted for fellowships were essentially temporary employees having faculty privileges. As such, they cannot be considered students or prospective students, as contemplated by § 2 (*d*).

Our conclusion is supported by the Legislature's use of the term "employee" in G. L. c. 151C, § 2 (*b*). That section prohibits an educational institution from penalizing any of its "employees" "because he has testified, participated or assisted in any proceeding" under the statute. *Id.* Because the Legislature knew how to reference employees specifically when it wanted to, its use of the words "any person" in § 2 (*d*) cannot reasonably be construed to include prospective employees applying for employment positions, including fellowships, at educational institutions. For these reasons, the positions do not fall under the protection of G. L. c. 151C, and the claim was properly dismissed.

*Judgment affirmed.*