Leibensperger, Edward P., J.
Plaintiff, Daralyn Heywood, flies this action against defendants, Kevin Buckley and the Massachusetts State Police (MSP), claiming sexual harassment and retaliation in violation of G.L.c. 15IB, §4. Buckley and MSP separately move to dismiss Heywood’s Complaint in its entirety pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons stated below, defendants’ motions to dismiss are denied.
BACKGROUND
The facts as alleged in the Complaint are as follows.
Heywood is a female Sergeant with MSP. Heywood has worked for MSP for twenty-three years. She received outstanding observation reports and employment evaluations. Buckley is a male Lieutenant with MSP, commander of the Yarmouth barracks (beginning in September 2014), and Heywood’s direct supervisor.
Heywood worked closely with Buckley at MSP, handled the daily tasks of administration within the barracks, and supervised the day shift. In 2014, Buckley gave Heywood an outstanding employment evaluation.
Soon after arriving at the Yarmouth barracks, Buckley began to initiate personal and highly inappropriate conversations with Heywood during work hours. Buckley told Heywood that he was having an extramarital affair with another female MSP Sergeant. On several occasions, Buckley discussed explicit details of his sexual encounters with his mistress. He also told Heywood about the intimate sexual deficiencies in his marriage. These conversations made Heywood extremely uncomfortable.
Heywood experienced Buckley’s continuous attempts to talk about his sexual endeavors as a sexual advance towards her. Heywood initially attempted to end the sexual conversations by simply telling Buckley that the subject matter was inappropriate. The offensive conversations continued.
Sometime in May 2015, Buckley told Heywood that he planned to end his affair with the other female MSP Sergeant. Buckley also told Heywood that his mistress was jealous of Heywood and she threatened to disclose the details of his affair to his wife. At this point, Heywood informed Buckley that she did not want to get involved with his personal problems and she would no longer tolerate discussions concerning his sex life or his affair.
Shortly thereafter, Heywood began to suffer adverse employment actions in retaliation for rejecting Buckley’s sexual conduct. Buckley began to unfairly and openly criticize Heywood’s work and to overturn her supervisory decisions, which caused tension within the barracks. Buckley’s conduct created an intimidating and hostile work environment for Heywood and interfered with her ability to do her job.
In August 2015, as an alleged act of retaliation, Buckley transferred Heywood from the day shift, where she worked for approximately one year, to the midnight shift. Thereafter, Buckley began to openly criticize the midnight shift via e-mail. The open criticism of the shift, which Heywood supervised, caused junior officers under her supervision to question Buckley’s motivations and to undermine her authority as a supervisor. Buckley cancelled days off for officers under Heywood’s supervision that she previously approved, undermining Heywood’s authority. In addition, Buckley denied Heywood opportunities to attend training.
On December 16, 2015, Buckley and Heywood met with a MSP Captain, where to Heywood’s surprise, Buckley aggressively criticized her work. Heywood did not have prior notice of the meeting and thus, did not have a union representative present. At the meeting, Heywood requested an immediate transfer out of the Yarmouth barracks to remove herself from Buckley’s supervision. Heywood’s request was denied. She was told that she would have to remain at the Yarmouth barracks for an additional sixty days. In fact, however, Heywood was never transferred from the Yarmouth barracks.
On December 28, 2015, Heywood filed a formal internal complaint alleging sexual harassment and retaliation even though she feared additional retaliation for reporting Buckley.
After filing the internal complaint, many MSP officers ostracized her. In February 2016, someone placed a sign in a stairwell of the Yarmouth barracks that read, “DO YOUR JOB — TEAMWORK—BE SAFE.” The slogan was derived from an e-mail that Buckley sent *162 to the entire barracks, which openly criticized Heywood’s shift.
MSP conducted an investigation of Heywood’s allegations against Buckley, discussed above. The Harassment Investigation Unit conducted the investigation and never referred the complaint to Internal Affairs. Heywood believes that the investigation was intended to cover up Buckley’s misconduct.
During the investigation, the Harassment Investigation Unit requested an interview with a female sergeant to whom Heywood disclosed, in confidence, the details of Buckley’s misconduct. Upon arriving at the interview, someone told the female sergeant witness that she was subject to discipline for failing to report Buckley’s misconduct. The witness was subsequently transferred to the midnight shift. According to Heywood, this was witness intimidation and a further example of MSP’s failure adequately to investigate Heywood’s allegations. Moreover, the investigator failed to interview key witnesses and chose to omit key facts from the report. The investigation resulted in a finding of “not sustained” with regard to Heywood’s complaint for sexual harassment and “exonerated” with regard to the retaliation claim.
On May 11, 2016, Heywood filed claims for sexual harassment and retaliation against Buckley and MSP with the Massachusetts Commission Against Discrimination (MCAD) pursuant to G.L.c. 151B.
On October 13, 2016, Heywood filed this action in the Superior Court. Count I is a claim for sexual harassment pursuant to G.L.c. 15IB, §4 against Buckley and MSP. Heywood alleges that Buckley sexually harassed her by subjecting her to unwanted conduct of a sexual nature. This conduct unreasonably interfered with Heywood’s employment at MSP by creating an intimidating, hostile, humiliating, and sexually offensive work environment. As a result, Heywood suffered adverse employment actions, loss of enjoyment of life, emotional distress, and other damages.
Count II is a claim for retaliation pursuant to G.L.c. 15 IB, §4 against Buckley and MSP. Heywood alleges that she engaged in various protected activities when she opposed practices forbidden under G.L.c. 151B. Moreover, Heywood asserts that the defendants subjected her to adverse employment actions and retaliation, along with continuous and ongoing harassment, which created a continued and sustained hostile work environment.
ANALYSIS
To survive a motion to dismiss, the plaintiffs “(f]actual allegations must be enough to raise a right to relief above the speculative level. .. [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). In other words, “(w]hile a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his ‘entitle[ment] to relief requires more than labels and conclusions . . .” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 127 S.Ct. at 1966. Dismissal under Mass.R.Civ.P. 12(b)(6) is proper where a reading of the complaint establishes beyond doubt that the facts alleged do not support a cause of action which the law recognizes, such that the plaintiffs claim is legally insufficient. Nguyen v. William Joiner Center for the Study of War and Social Consequences, 450 Mass. 291, 295 (2007).
Buckley and MSP separately move to dismiss Count I (sexual harassment) and Count II (retaliation) of Heywood’s Complaint pursuant to Mass.R.Civ.P. 12(b)(6). I consider each count in turn below.
Sexual Harassment (Count I)
Defendants argue that the sexual harassment claim should be dismissed because Heywood did not timely file her MCAD charge within three hundred days of the alleged act of harassment. Defendants assert that Heywood’s sexual harassment claim is based on conversations between Heywood and Buckley that occurred between September 2014 and May 2015. They contend that Heywood “does not allege a single sexual incident after May 2015.” See Complaint at paras. 23-24 (alleging that in May of 2015, Heywood informed Buckley that she did not want to get involved with his personal problems and would no longer tolerate discussions concerning his sex life or his affair). Heywood did not file her MCAD charge until May 11, 2016, which is more than three hundred days after the alleged last act of harassment. As a result, defendants say, Heywood’s sexual harassment claim is barred.
Heywood argues that her complaint is timely under the so-called continuing violation doctrine. This argument is based on the fact that she was a victim of conduct evidencing a hostile work environment arising out of her attempt to stop the sexual harassment. That conduct included, among other things, assignment to the night shift in August 2015, an event well within the three-hundred-day limitations period. Even though Buckley’s conduct in August 2015 was not overtly sexual, it was allegedly a part of a course of conduct to harass her because she rejected the sexual conduct. See Noviello v. Boston, 398 F.3d 76, 87 (1st Cir. 2005) (“When an individual sexually harasses a victim and then engages in non-sexual retaliatory harassment, the sexual and non-sexual harassment arguably may be part and parcel of the same violation”) .
“The filing of a timely charge of discrimination with the MCAD is a prerequisite to the filing of such an action in the Superior Court.” Silvestris v. Tantasqua Regional Sch. Dist, 446 Mass. 756, 766 (2006). See Everett v. 357 Corp., 453 Mass. 585, 600 (2009) (noting that “[without the predicate filing in MCAD, the Su *163 perior Court has no jurisdiction to entertain the claim of discrimination” as the MCAD filing cannot be waived). Under G.L.c. 15IB, §5, a plaintiff is required to file an employment discrimination claim at MCAD “within 300 days after the alleged act of discrimination.” G.L.c. 15IB, §5. The Massachusetts Commission Against Discrimination’s regulations, however, provide the following:
The [MCAD] complaint may be filed by the complainant, personally or through his/her authorized representative by delivering it personally or by U.S. Mail to any of the Commission’s offices at any time within 300 days after the alleged unlawful conduct; provided, however, that the 300-day requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature, or when pursuant to an employment contract, an aggrieved person enters into grievance proceedings concerning the alleged discriminatoiy act(s) within 300 days of the conduct complained of and subsequently files a complaint within 300 days of the outcome of such proceeding(s). Provided, likewise, that the 300-day requirement shall not be a bar to filing in those instances when, pursuant to 804 CMR 1.10(3) (7b), an aggrieved person enters into an agreement to voluntarily mediate the alleged discriminatory acts within 300 days of the conduct complained of and subsequently files a formal complaint within 21 days of the conclusion of such proceedings.
804 Code Mass. Regs. §1.10(2) (emphasis added).
Heywood contends that the regulation, describing the so-called continuing violation doctrine, applies to the facts of this case. “This exception for violations of a continuing nature recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatoiy nature and impact.” Ocean Spray Cranberries, Inc. v. Massachusetts Comm’n Against Discrimination, 441 Mass. 632, 642-43 (2004) (citation and internal quotation marks omitted) . See Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531-39 (2001). For the continuing violation doctrine to apply, a plaintiff must ordinarily prove that: (1) at least one discriminatory act occurred within the limitations period; (2) the alleged timely discriminatoiy act has a substantial relationship to the alleged untimely discriminatoiy acts; and (3) earlier violations outside the limitations period did not trigger a plaintiffs awareness and duty to assert his or her rights. Ocean Spray Cranberries, Inc. v. Massachusetts Comm’n Against Discrimination, 441 Mass, at 642-43.
Accepting the factual allegations in the Complaint as true, I conclude that dismissal of Count I is not warranted at this time. Heywood sufficiently alleges facts in her Complaint, that when viewed in their totality, might reasonably suggest that the continuing violation doctrine applies. See Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. at 539 (explaining that “a plaintiff who demonstrates a pattern of sexual harassment that creates a hostile work environment and that includes conduct within the .. . statute of limitations, may claim the benefit of the continuing violation doctrine and seek damages for conduct that occurred outside the limitations period, unless the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct”).[2] Specifically, plaintiff alleges conduct in August 2015 and thereafter that evidences a hostile work environment and could reasonably be interpreted as continuing pressure on plaintiff with respect to the sexual topics that Buckley had previously advanced. In sum, a more developed factual record following discovery is necessary to determine whether Heywood’s sexual harassment claim in Count I is timely.[3] Accordingly, this issue is better left for resolution at summary judgment or trial.
Retaliation (Count II)
Defendants Buckley and MSP also move to dismiss Heywood’s retaliation claim in Count II of her Complaint. Defendants argue that the retaliation claim should be dismissed because Heywood did not suffer an adverse employment action. Heywood, however, contends that she suffered a material change in her working conditions that constituted retaliation under G.L.c. 151B.
A claim of retaliation is separate and distinct from a claim of discrimination based on sexual harassment. Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 405 (2016). A plaintiff bringing a retaliation claim is not complaining of discriminatoiy treatment as such, but rather of treatment that punishes her for complaining of or otherwise opposing such discriminatory treatment. Id. Thus, a retaliation claim may succeed even if the underlying discrimination claim based on sexual harassment fails, provided that in asserting her claim, the plaintiff can prove that she reasonably and in good faith believed that the employer was engaged in wrongful discrimination. Id. In order to state a claim for retaliation, a plaintiff must allege that: (1) the employee reasonably and in good faith believed that the employer was engaged in wrongful discrimination; (2) the employee acted reasonably in response to that belief through reasonable acts meant to protest or oppose the discrimination; (3) the employer took adverse action against the employee; and (4) the adverse action was a response to the employee’s protected activity. See id. at 405-06 (recounting four elements of a retaliation claim necessaiy to survive summary judgment). See also Mole v. University of Mass., 442 Mass. 582, 591-92 (2004) (discussing prima facie *164 elements of retaliation). An adverse employment action is any action that “was substantial enough to count as . . . [a] material disadvantage.” MacCormack v. Boston Edison Co., 423 Mass. 652, 662-63 (1996) (noting that plaintiff may show he or she was disadvantaged with respect to salary, grade, or other objective terms and conditions of employment). A hostile work environment is one that is “pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.” College-Town, Div. of Interco, Inc. v. Massachusetts Comm’n Against Discrimination, 400 Mass. 156, 162 (1987).
Dismissal of Heywood’s retaliation claim in Count II is not warranted at this early stage of the case. See Ritchie v. Department of State Police, 60 Mass.App.Ct. 655, 663-66 (2004) (concluding that it was premature to dismiss the plaintiffs claim of retaliation in sexual harassment case involving MSP). Heywood alleges in her Complaint that after she raised concerns with Buckley about his alleged inappropriate sexual harassment, he undermined her authority with other MSP troopers, transferred her to the midnight shift, and denied her training opportunities. She also alleges that MSP’s subsequent investigation of her sexual harassment claim was a sham. These claims are sufficient to state a plausible action for retaliation.
CONCLUSION
Defendants’ Motions to Dismiss (Paper Numbers: 8 and 9) are DENIED.

 The continuing violation doctrine is parallel in some respects to the “discovery rule” in tort actions. “As a general rule, tort actions accrue at the time the plaintiff is injured.” Silvestris v. Tanasqua Regional Sch. Dist., 446 Mass. at 766. However, “pursuant to the so-called ‘discovery rule,’ the statute of limitations for a particular cause of action does not begin to run until the plaintiff knows, or should have known, that she has been harmed by the defendant’s conduct.” Id. “In most instances, the question when a plaintiff knew or should have known of the existence of a cause of action is one of fact that will be decided by the trier of fact.” Id. at 767. Moreover, the appropriate standard this court should apply when assessing knowledge or notice is that of a reasonable person in the plaintiffs position. Id.

 Citing an unpublished Appeals Court case, MSP argues that Heywood cannot anchor her untimely sexual harassment claim with timely nonsexual conduct underlying her retaliation claim. See Sansoucy v. Southcoast Health Systems, Inc., 84 Mass.App.Ct. 1114, 2013WL5524116 at * 1 (Mass.App.Ct. Oct. 8, 2013) (Rule 1:28) (affirming defendants’ motions for summary judgment and concluding that harassment of a nonsexual nature was not an “anchoring event” sufficient to permit extension of three-year limitations period of G.L.c. 151B, §9 pursuant to continuing violation doctrine for otherwise undisputed incidents of sexual harassment occurring outside the limitations period). I note that the sexual harassment claims in Sansoucy were dismissed on summary judgment, rather than a motion to dismiss, and involved the three-year limitations period under G.L.c. 151B, §9. Again, whether Heywood’s sexual harassment claim is timely, under the unique facts of this case, is better left for resolution following discovery.