JOSEPH W. APPLETON *vs.* ALEXANDER HOPKINS.

The *St.* of 1855, *c.* 444, abolishing imprisonment for debt, does not apply to a warrant of distress for nonpayment of taxes.

HABEAS CORPUS in behalf of a citizen of Boston arrested by the respondent, a constable of Boston, for nonpayment of taxes, pursuant to Rev. Sts. *c.* 8, § 11. All the proceedings were ad-mitted to be in due form.

*B. E. Perry,* for the petitioner. By § 1 of *St.* 1855, *c.* 444, "imprisonment for debt is abolished," and there is nothing in the subsequent sections to restrain this from applying to taxes. In the liberal spirit in which this statute should be construed, "any kind of a just demand" is a debt. *Carver* v. *Braintree Manufacturing Co.* 2 Story R. 450. See also *Commonwealth* v. *Keeper of Philadelphia Jail,* 4 S. & R. 506. "Whatever the

laws order any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge." 3 Bl. Com. 158. *Gray* v. *Bennett*, 3 Met. 526. Taxes are " debts," within these definitions. They are recognized and provable as such under the insolvent laws. *Sts.* 1838, *c.* 163, §§ 3, 12; 1850, *c.* 218. The tax on a bank is recoverable by action of debt, and has been called by this court " a present debt." Rev. Sts. *c.* 9, § 3. *Commonwealth* v. *Commonwealth Bank*, 22 Pick. 178. The fact that an action at law will not lie for other taxes does not make them the less debts. The protection which the owner of property receives from the government is in the nature of a consideration for an implied promise to pay the tax. But if taxes cannot be said to be contract debts, they are still debts. The legislature may well be supposed to have intended to give up the right of arrest in behalf of the public, when they have taken it away from the private creditor. The *St.* of 1855, *c.* 276, relating to persons committed to prison on warrants of distress, is repealed by the subsequent *St.* of 1855, *c.* 444.

*A. A. Ranney*, (City Solicitor,) for the respondent. The ordinary " legal acceptation of debt is a sum of money due by certain and express agreement." 3 Bl. Com. 154. And it is in this sense that the word is used in *St.* 1855, *c.* 444. A tax is not a debt by contract. *Peirce* v. *Boston*, 3 Met. 520. The *St.* of 1855, *c.* 444, cannot be held to extend beyond cases in which arrests might previously have been made on mesne process or execution. To hold this act applicable to arrests on warrants of distress for nonpayment of taxes would lead to this singular consequence, that, as the provisions of law concerning fraudulent conveyances do not apply to such cases, there would be no remedy against one who so concealed or invested his property as to prevent its being distrained. An express provision was considered necessary to give the right of discharge from taxes by taking the poor debtors' oath. Rev. Sts. *c.* 8, § 48, p. 804. And the *St.* of 1855, *c.* 276, passed within twenty days of *c.* 444, contains general provisions as to arrests on all warrants of distress issuing in behalf of the Commonwealth. The mode of collecting taxes, being a peculiar remedy, pointed out by

statute, must be strictly pursued; and is not to be supposed to be taken away without the clearest words of repeal.

The opinion of Story, J. in *Carver* v. *Braintree Manufacturing Co.* 2 Story R. 432, must be confined to the particular case before him; otherwise, it would go the length of classing all torts as debts.

The qualified liability of the stockholders of a manufacturing corporation for the debts of the corporation, under *St.* 1808, *c.* 25, § 6, has been held not to be a " debt" which could be proved under the insolvent laws. *Kelton* v. *Phillips,* 3 Met. 61. And that liability is analogous to the present; for in each no action lies against the individual sought to be charged, but the only remedy is to take his body or property.

SHAW, C. J. The only question in the present case is, whether the laws authorizing the arrest of a party on a warrant of distress for the nonpayment of a tax, assessed in pursuance of the laws of the Commonwealth, have been repealed by the late statute, entitled " An act to abolish imprisonment for debt, and to punish fraudulent debtors." *St.* 1855, *c.* 444. And it is admitted on the part of the applicant, that, unless all the acts previously in force, authorizing such arrest, are repealed by this statute, this arrest was regular, and all proceedings on the warrant of distress are correct.

The first section of the statute is this : " Imprisonment for debt is hereby forever abolished in Massachusetts." This language is certainly pointed and emphatic, but still it is to be construed and the meaning of the legislature ascertained. Language may sometimes be so brief as to be obscure. Here it is obvious that the word " forever," which seems to give so much force and significance to the sentence, adds nothing to the legal effect of the provision ; the construction would have been the same without it. All statutes, containing no limitation of time, are perpetual · which means that they are to stand as law, until repealed, altered or modified by the legislature. Even the significant word " abolished," when taken, as it must be, in connection with the other detailed provisions of the act, is found to mean only that imprisonment for debt, from the time it went into operation, should

be regulated, modified and mitigated in conformity with these provisions. Writs and executions are still to issue in the usual form, commanding the proper officers, for want of property found, to arrest the bodies of debtors ; and the general effect of the provisions of this act is to direct the services of these processes in such manner as to afford the debtor a more prompt and efficacious relief, by taking the poor debtors' oath, that he has no property, if he offers to do so, and can show, upon the required examination, that he can do so with truth and honesty. Another prominent object of the statute is, as it is expressed in the title, to punish fraudulent debtors.

We are then to inquire, according to the ordinary rules of exposition, taking the whole statute together, whether its provisions extend to persons arrested upon warrants of distress for the nonpayment of taxes.

In a certain large and general sense, taxes may be said to be debts, due to the Commonwealth, the county, town and parish, respectively; but in the mode of collection and enforcement, which is the point in question in this inquiry, they have always been regarded as distinct. By the law providing for the settlement of the estates of deceased insolvents, all public taxes are to be allowed as preferred claims next after those of the United States ; but this is by force of express provisions of statute. Rev. St. *c.* 68, § 1. Similar provision is made by the law regulating the settlement of the estates of living insolvents, by *St.* 1838, *c.* 163, § 12, since modified by *St.* 1850, *c.* 218, which relinquishes the preference given to the Commonwealth. The special provision by statute for their allowance implies that they would not, in the view of the legislature, be included under the general provisions of law respecting debts.

No action lies for the recovery of taxes, except in a few special cases, where by law an action can be brought in the name of the collector. *Andover & Medford Turnpike* v. *Gould,* 6 Mass. 44. In a common law action against a city, a tax due to the city cannot be set off. *Peirce* v. *Boston,* 3 Met. 520.

But the main ground on which we found our opinion, that the *St.* of 1855, *c.* 444 did not repeal the former acts, is, that in its

45 *

entire details, it manifestly applies to a different class of subjects and legal processes. By an act of the same session, passed but a few weeks before, the legislature had provided for the relief of persons arrested on warrants of distress in favor of the Commonwealth, by taking the poor debtors' oath. *St.* 1855, *c.* 276. That act contains specific directions how application is to be made and notices given, and especially notice to the district attorney of the Commonwealth; and the examination is to be had before two justices, one of whom of the quorum.

The provisions of *St.* 1855, *c.* 444, are plainly adapted to the case of a common writ or execution in favor of a creditor. The first step, after the issuing of execution, which is to be in the usual form, is, for the plaintiff to make oath. § 3. Next, when the defendant is arrested, he is to be taken before one of several magistrates named—other than justices of peace—by whom, if the debtor desires it, notice is to be given to the creditor, his agent or attorney. § 4. In case of a warrant of distress, in common form, to whom is such notice to be given; who is the creditor, or his agent or attorney?

Similar directions are given in regard to arrest on mesne process, with such variations as are proper to such process. In case the poor debtors' oath, after examination by the magistrate, is refused, the prisoner stands committed as upon an ordinary arrest on writ or execution, with the liabilities and privileges incident to that condition.

Without pursuing the details further, it appears to us, that the subject matter, for which the legislature were making provision, by *St.* 1855, *c.* 444, did not embrace the case of public taxes, or the service of warrants of distress; they were legislating *alio intuitu*, upon another and distinct subject. The only repealing clause in this statute, is of " all acts or parts of acts inconsistent with this act." Being of opinion that arrest on a warrant of distress for nonpayment of taxes does not come within the scope of its provisions, and that the previous laws in force, warranting such arrest, were not repealed, the judgment of the court is that the arrest was legal and justifiable.

*Prisoner remanded.*