ANIMAL LEGAL DEFENSE FUND, INC., & others[1] *vs.*
FISHERIES & WILDLIFE BOARD.

Suffolk. October 6, 1993. - December 20, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law*, Standing, Equal protection of laws. *Statute*, Construction. *Fisheries and Wildlife Board. Public Board. Words,* "Management."

In an action for declaratory and injunctive relief, plaintiffs did not have standing to challenge the constitutionality of G. L. c. 21, § 7, which sets forth the criteria for membership on the State fisheries and wildlife board, where they did not demonstrate they had suffered any legally cognizable injury by operation of the statute [638-640, 641], and where there was a rational basis for the differing criteria for membership [640-641]; the matter was remanded for entry of a judgment declaring the plaintiffs' lack of standing [641-642].

CIVIL ACTION commenced in the Superior Court Department on January 23, 1990.

The case was heard by *Margot Botsford*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Steven M. Wise* for the plaintiffs.

*Thomas A. Barnico*, Assistant Attorney General (*David C. Hoover* with him) for the defendant.

ABRAMS, J. The plaintiffs are the Animal Legal Defense Fund, Inc. (ALDF), and three members of that organization.

---

[1]Karen Bunting, Scott Van Valkenburg, and Dorothy Checchi-O'Brien. The Fund for Animals was a party in the Superior Court but was not named in the notice of appeal. The Fund for Animals therefore is not before us on appeal. See *Filios* v. *Commissioner of Revenue*, 415 Mass. 806, 807 n.2 (1993).

The defendant is the Fisheries and Wildlife Board (board). The plaintiffs sought a declaratory judgment that G. L. c. 21, § 7 (1992 ed.), was unconstitutional on its face. The plaintiffs also sought a permanent injunction against enforcement of the statute. The board asserted that the plaintiffs lacked standing to challenge the statute's constitutionality. On cross motions for summary judgment, the Superior Court judge allowed the board's motion, and denied the plaintiffs' motion. The plaintiffs appealed. We allowed the plaintiffs' application for direct appellate review. For the reasons stated herein, we remand this matter to the Superior Court for entry of a judgment declaring that the plaintiffs have not suffered any legally cognizable injury and, therefore, the plaintiffs lack standing to challenge the facial constitutionality of G. L. c. 21, § 7.

1. *The facts.* The board supervises and controls the division of fisheries and wildlife. The division promulgates regulations that govern the public aspects of inland fisheries and wildlife. Any regulation issued by the division is "subject to the approval of the . . . board." G. L. c. 131, § 5 (1992 ed.). Each of the three individually named plaintiffs wishes to serve on the board but considers himself or herself to be ineligible based on the board membership criteria outlined in G. L. c. 21, § 7.[2]

General Laws c. 21, § 7 (1992 ed.), provides: "The division of fisheries and wildlife shall be within the department of fisheries, wildlife and environmental law enforcement in the executive office of environmental affairs and shall be under the supervision and control of the fisheries and wildlife board, hereinafter called the board, which shall consist of seven members to be appointed by the governor for terms of five years. Five board members shall be appointed from one of each of the five fish and game districts, shall hold and have held for at least five consecutive years a sporting license in the commonwealth, four of whom shall represent the fish-

---

[2]On this record, no individual member of the ALDF has applied for or been denied membership on the board.

ing, hunting and trapping interests and at least one of whom shall have been actively engaged in farming on land owned by him for a period of not less than five years. Two board members shall be appointed at large, shall be particularly interested in the propagation, protection, research and management of wild birds and mammals and any, so-called, endangered species and one of whom shall be a wildlife biologist."

None of the three individually named plaintiffs holds a sporting license. Moreover, all three of these individuals state that they are not interested in the "management" of wildlife as they contend the term is defined under G. L. c. 21, § 7. The plaintiffs, in their motion for summary judgment, assert that the criteria for board membership outlined in G. L. c. 21, § 7, illegally exclude them from consideration for board membership.[3]

The board argues that the plaintiffs do not have standing to assert their claims, and that, even if one or more of them had standing, the statutory criteria for membership outlined in G. L. c. 21, § 7, are constitutional. The facts are not in dispute, and therefore summary judgment was the appropriate procedure for determining the plaintiffs' claims. See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 374, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982); and *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). The judge allowed the board's motion on the ground

---

[3]The plaintiffs specifically claim that the requirements that five of the seven board members must have held a sporting license in the commonwealth for at least five consecutive years, that four of these five must represent fishing, hunting and trapping interests, and that the two at-large members must be interested in the "management" of wildlife violate: the right to interstate travel; art. 30 of the Massachusetts Declaration of Rights and Part 2, c. 1, § 1, art. 4, of the Massachusetts Constitution as an illegal delegation of power to make laws; the guaranty of equal protection provided by arts. 6 and 7 of the Declaration of Rights and the Fourteenth Amendment to the United States Constitution; the right of freedom of speech under art. 16 of the Declaration of Rights; art. 49 of the Amendments to the Massachusetts Constitution; and the due process clause of the Fourteenth Amendment.

that the plaintiffs lacked standing to challenge the validity of
G. L. c. 21, § 7. There was no error.

2. *Standing.* In *Slama* v. *Attorney Gen.*, 384 Mass. 620
(1981), we determined that "[t]o have standing in any ca-
pacity, a litigant must show that the challenged action has
caused the litigant injury." *Id.* at 624. In *Kaplan* v. *Bowker*,
333 Mass. 455 (1956), we noted that, "[f]rom an early day
it has been an established principle in this Commonwealth
that only persons who have themselves suffered, or who are
in danger of suffering, legal harm can compel the courts to
assume the difficult and delicate duty of passing upon the
validity of the acts of [another] branch of government." *Id.*
at 459. Therefore, the plaintiffs must demonstrate that the
operation of G. L. c. 21, § 7, has caused them some legally
cognizable injury.

The key in deciding whether the plaintiffs have standing to
challenge the constitutionality of G. L. c. 21, § 7, is to de-
termine whether any individual member of the ALDF,[4] in-
cluding the three individually named plaintiffs, could demon-
strate that he or she has suffered a legally cognizable injury
by virtue of G. L. c. 21, § 7. The individual plaintiffs claim
that they have standing to challenge the constitutionality of
G. L. c. 21, § 7, because its membership criteria make them
ineligible to serve on the board. We do not agree.

General Laws c. 21, § 7, requires that five of the seven
board members have a sporting license and that the other
two board members have an interest in the management of
wildlife. The membership criteria outlined in G. L. c. 21,
§ 7, may make the individual plaintiffs, none of whom holds
a sporting license under the established facts, ineligible for
five of the seven board positions. However, the criteria do
not, as the plaintiffs assert, make the individual plaintiffs in-
eligible for the two at-large seats. General Laws c. 21, § 7,
provides that the two at-large seats on the board shall be as-

---

[4]The ALDF contends that it has associational standing to bring this
case. To possess such standing, the ALDF must establish that "its mem-
bers would otherwise have standing to sue in their own right." *Hunt* v.
*Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

signed to persons who "shall be particularly interested in the propagation, protection, research and management of wild birds and mammals and any, so-called, endangered species and one of whom shall be a wildlife biologist." The statute does not, by its terms, make the individual plaintiffs ineligible for the at-large board positions.

The plaintiffs claim, however, that the term "management" in G. L. c. 21, § 7, means the killing of animals in ways that cause pain, distress, and suffering. The plaintiffs assert that none of them is interested in wildlife "management" as so defined and, therefore, under the terms of the statute, none of them is eligible for the two at-large positions on the board. This statutory exclusion, the plaintiffs conclude, constitutes a legally cognizable injury.

The plaintiffs do not offer any support for their assertion that the Legislature intended the word "management" to have the meaning which they assign to it. General Laws c. 4, § 6 (1992 ed.), provides that "[w]ords and phrases shall be construed according to the common and approved usage of the language . . . ." See *Gateley's Case*, 415 Mass. 397, 399 (1993) (in a statute words are to be accorded their ordinary meaning and approved usage). See also *Miles* v. *Planning Bd. of Millbury*, 404 Mass. 489, 492 (1989); *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983).

Webster's New International Dictionary 1372 (3d ed. 1968) defines "management" as "the act or art of managing: as . . . more or less skilled handling of something . . . the conducting or supervising of something (as a business); *esp*: the executive function of planning, organizing, coordinating, directing, controlling, and supervising any industrial or business project or activity with responsibility for results . . . judicious use of means to accomplish an end . . . ." In *Lynch* v. *Commissioner of Educ.*, 317 Mass. 73, 80 (1944), we said that "management" was the "conduct, administration, guidance, control, judicious use of means to accomplish an end."

There is no indication in G. L. c. 21, § 7, that the Legislature intended the term "management" to have a meaning other than the one normally ascribed to it. Nothing in the

statute or in the general definition of the word "manage-
ment" supports the plaintiffs' claim that management means
the killing of animals in ways that cause pain, distress, and
suffering. Under the general definition of the term "manage-
ment," it is clear that the three individual named plaintiffs
are eligible for the two at-large seats. Therefore, the plain-
tiffs' claim that they have standing to challenge the constitu-
tionality of G. L. c. 21, § 7, because it excludes them from
consideration for board membership fails.

The plaintiffs next contend that, even if it is determined
that G. L. c. 21, § 7, does not absolutely exclude them from
consideration for board membership, the ALDF and the
three individually named plaintiffs should be deemed to have
standing to challenge its constitutionality based on the fact
that the statute's requirement that five board positions be
filled with persons holding sporting licenses operates to di-
minish significantly an individual ALDF member's chances
for appointment to the board by reducing the number of
seats for which he or she is eligible from seven to two. In
support of their contention, the plaintiffs' rely on cases in-
volving classifications based on race. See, e.g., *Turner* v.
*Fouche*, 396 U.S. 346 (1969). The plaintiffs' reliance on such
cases is misplaced.

"In equal protection cases, a classification involving a sus-
pect group or a fundamental right must be supported by a
compelling State interest. Cases not involving a suspect
group or fundamental right need be supported only by a ra-
tional or conceivable basis." *Lee* v. *Commissioner of Reve-
nue*, 395 Mass. 527, 529-530 (1985). Classifications based on
sex, race, color, creed or national origin are considered sus-
pect. See *Commonwealth* v. *King*, 374 Mass. 5, 21 (1977).
See also art. 106 of the Amendments to the Constitution of
the Commonwealth. A classification based on the possession
of a sporting license does not burden a suspect group or a
fundamental right and is, therefore, subject to review under
the rational basis standard.

A party claiming standing to challenge the validity of a
statute under the rational basis standard of review "has an

onerous burden of proof." *Marshfield Family Skateland, Inc.* v. *Marshfield*, 389 Mass. 436, 446, appeal dismissed, 464 U.S. 987 (1983). A statute subjected to rational basis scrutiny "will be upheld as long as it is rationally related to the furtherance of a legitimate State interest." *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986). See also *Vance* v. *Bradley*, 440 U.S. 93, 97 (1979). "[A] statute is presumed to be constitutional . . . and will not be invalidated where any state of facts reasonably may be conceived to justify it" (citation omitted). *Dickerson, supra* at 743. See also *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth*, 375 Mass. 85, 93 (1978); *Pinnick* v. *Cleary*, 360 Mass. 1, 28 (1971). The sporting license classification for some board members contained in G. L. c. 21, § 7, ensures that most board members have some familiarity with the fisheries and wildlife resources they regulate and thereby rationally advances a legitimate State interest.

The plaintiffs also claim standing under art. 97 of the Amendments to the Constitution of the Commonwealth.[5] This article grants "[t]he people . . . the right to . . . the natural, scenic, historic and aesthetic qualities of their environment; and the . . . right to the conservation, development and utilization of . . . natural resources." The plaintiffs state that the board membership criteria in G. L. c. 21, § 7, harm the rights afforded them under art. 97. The plaintiffs offer no support for this assertion. Consequently, the plaintiffs' art. 97 standing claim fails.

In their complaint, the plaintiffs sought a declaratory judgment that G. L. c. 21, § 7, was unconstitutional on its face. "In declaratory actions, even when relief is denied, the rights of the parties must be declared." *Williams* v. *Secretary of the Executive Office of Human Servs.*, 414 Mass. 551, 570 (1993). See *Attorney Gen.* v. *Kenco Optics, Inc.*, 369 Mass. 412, 418 (1976). Because the plaintiffs failed to show a le-

---

[5]Article 97 of the Amendments to the Constitution of the Commonwealth, approved and ratified on November 7, 1972, superseded art. 49 of the Amendments, but preserved the right of the people to enjoy the natural resources of the Commonwealth.

gally cognizable injury, they have no standing to challenge the facial constitutionality of the statute. We remand this matter to the Superior Court for entry of a judgment declaring that the plaintiffs have not suffered any legally cognizable injury and, therefore, the plaintiffs lack standing to challenge the facial constitutionality of G. L. c. 21, § 7.

*So ordered.*