Troy, Paul E., J.
INTRODUCTION
Fathers and Families, Inc. (“Fathers and Families”) and the individual plaintiffs brought this action for declaratory and injunctive relief seeking to enjoin the implementation of the 2009 Child Support Guidelines and to require the Legislature to enact new guidelines. This matter is before the court on the defendants’ motion to dismiss the complaint for lack of jurisdiction pursuant to Mass.R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons discussed below, the defendants’ motion to dismiss is DENIED insofar as it seeks dismissal pursuant to Rule 12(b)(1) but is ALLOWED pursuant to Rule 12(b)(6).
BACKGROUND
The following facts, taken primarily from the verified complaint and attached exhibits, are assumed to be true for purposes of this motion to dismiss.[4] Fathers and Families is a non-profit organization with several thousand members and affiliates, including divorced, remarried, and never married fathers. The majority of these fathers are non-custodial parents who pay child support.
Approximately 25% of Fathers and Families’ members are women, some of whom are second wives or partners following a divorce. Fathers and Families works for child support reform and offers assistance and guidance to its members concerning the child support guidelines and calculation of support orders. Ned Holstein (“Holstein”) is the Executive Director of Fathers and Families.
*166 On October 6, 2006, pursuant to 42 U.S.C. §667, which requires a review of state child support guidelines atleast every four years, Chief Justice for Administration and Management Robert Mulligan (“the CJAM”) appointed a Massachusetts Child Support Guidelines Task Force (“Task Force”) to study the Massachusetts guidelines and make recommendations for new guidelines. The Task Force included Probate Court judges, Holstein, and a public policy economist, as well as designees of the Massachusetts Bar Association, Boston Bar Association, American Academy of Matrimonia1 Lawyers, Department of Revenue, Probate and Family Court Probation Department, and Legal Services. Following a Request for Proposal, the Trial Court contracted with Policy Studies, Inc. to perform an economic review of the existing guidelines based on available economic data and models, and in 2006, economist Jane Vehohr issued a report and made a presentation to the Task Force. The Task Force imposed a strict confidentiality requirement on its members during the guidelines review process. The Task Force held public hearings in Springfield, Boston, and Worcester in 2007.
Following two years of labor, the Task Force produced the Report of the Child Support Guidelines Task Force (“the Report”) in October of 2008. The Task Force considered a range of economic models and national and state data on the magnitude of child costs and how they vary by household income and family size. Ultimately, however:
the Task Force decided not to rely directly on any one particular economic model or specific set of results. The Task Force determined there is no single economic study that, for purposes of making guidelines recommendations, reliably isolates child costs or estimates the cost of raising a child in Massachusetts. The Task Force recognized that the available economic research is subject to credible criticism and empirical limitation, and there is no universally accepted standard among economists for precisely calculating child costs. Therefore, the recommendations of the Task Force on the guidelines formula and corresponding Chart reflect some broad principles and implications of the economic research but not any specific numeric result. The broad principles considered include: (1) the importance of an economically sound household to a child: (2) the percentage of income devoted to children’s needs levels off or declines at higher income amounts; and (3) assumptions that older children are more expensive as a percentage of household income than younger children have not been proven.
Report p. 24 (October 2008).
Holstein authored a minority report criticizing some of the methodology, assumptions, and recommendations in the Report. The CJAM limited the minoriiy report to six pages in length. Two other Task Force members signed on to portions of the minoriiy report. The minority report concludes that the recommended child support amounts are excessive and inequitable to non-custodial payors, the recommended child support amounts are unpayable in low-income cases, the guidelines unfairly favor children of a first family at the expense of second families and step-families, and the Report does not adequately reflect public opinion about child support.
The CJAM promulgated the new Massachusetts Child Support Guidelines (“New Guidelines”) on November 5, 2008. The New Guidelines became effective on January 1, 2009 and presumptively apply to all determinations of child support made after that date. The Legislature never reviewed, debated, or approved the New Guidelines, nor were they sent to the Governor for approval.
The New Guidelines provide that “(e)xisting orders and judgments less than three years old as of the effective date of these guidelines shall not be modified unless the income of one or both parties has changed or other new circumstance warrants modification.” The principles underlying the New Guidelines are to minimize the economic impact on the child’s standard of living; to encourage joint parental responsibility for child support in proportion to or as a percentage of income; to meet the child’s survival needs but entitle the child to a higher standard of living enjoyed by a parent; to recognize the non-monetary contributions and involvement of both parents, and the additional monetary or in-kind contributions of both parents; to recognize the 'importance, cost, and availability of health insurance coverage for the child; and to allow for orders and wage assignments that can be adjusted as income changes. The New Guidelines enumerate the sources of income to be considered in setting child support and set forth other relevant factors including the relationship to alimony or separate maintenance payments; claims of personal exemptions for child dependents; parenting time; child care costs; age of the children; health, dental, and vision insurance; uninsured and extraordinary medical and dental expenses; other child related expenses; and other orders and obligations.
The New Guidelines set forth a minimum child support order of $80 per month, subject to judicial discretion to deviate. They further provide that where the gross annual income of the parties exceeds $250,000, support at that level is a minimum presumptive order with additional amounts awardable in the court’s discretion. The New Guidelines permit modification after an order has been in effect for three years, if there are changes in the availability of reasonably affordable health insurance, or for any other material change in circumstance. The New Guidelines permit the court to deviate from the presumptive application of the guidelines if the court makes specific written findings that the guidelines amount would be *167 unjust or inappropriate under the circumstances and that deviation is consistent with the best interests of the child. The court must further set forth the specific facts of the case justifying departure from the guidelines. The New Guidelines include a Child Support Guidelines Worksheet and a Child Support Guidelines Chart.
In their complaint, the plaintiffs make numerous allegations about the adverse impacts of the New Guidelines which this Court assumes to be true for purposes of this motion. Those allegations are as follows: The amounts that parents actually spend on raising children vary substantially by income, class, region, culture, and individual choice. At the middle and high income levels, the New Guidelines substantially exceed reasonable estimates of the actual costs of supporting children. The Massachusetts Department of Children and Families has determined that the amount of $116 per week per child is the cost of raising one child for purposes of compensating foster parents, regardless of income. The child support amounts mandated under the New Guidelines exceed this $116 cost per week for one child at the payor’s weekly income level of $469 with no recipient income, and the mandated amount may be as much as $915 per week for one child. The child support amounts imposed on high-income payors greatly exceed any reasonable estimate of the actual cost of raising a child in Massachusetts. The New Guidelines do not account for income received by custodial parents in the form of direct or in-kind public assistance such as Section 8 housing, fuel assistance, WIC vouchers, food stamps, and state-paid health insurance.
Application of the New Guidelines would result in the imposition of hardship or impoverishment of many of the non-custodial members of Fathers and Families, and many of the individual plaintiffs. For lower-income payors, the child support obligations under the New Guidelines leave the payor unable to afford basic living expenses. Excessive child support orders often require non-custodial parents to work overtime or obtain a second job rather than spend time with their children. The New Guidelines do not account for the necessary initial expenditures incurred in setting up a separate household in which the child will reside for the presumed one-third of the time with the noncustodial parent, including the cost of first and last month’s rental and security deposits, mortgage closing costs, new furnishings and household necessities. In many middle-class cases, application of the New Guidelines results in the custodial parent experiencing a standard of living which is almost double that of the non-custodial parent with equal earnings. For upper-income payors who earn more than $75,000 per year, the New Guidelines may double or triple child support payments from current levels.
The New Guidelines allow the court to order a non-custodial parent to pay child support to the custodial parent until a child reaches the age of twenty-three if the child attends college, even if the child does not reside with the custodial parent. A married parent has no legal obligation to support a child in any amount after the child reaches the age of eighteen or emancipation, regardless of college attendance. The New Guidelines permit the court to order a non-custodial parent to pay half or more of the cost of attending college in addition to the full amount of the basic child support order.
The New Guidelines treat divorced and never-married parents differently by assuming that alimony can be included as part of the child support obligation without adjusting for the more favorable tax treatment which alimony receives under the U.S. Tax Code for divorced persons. A never-married parent cannot have part of his child support obligation treated as alimony. The New Guidelines do not adjust for the impact of tax advantages that accrue to custodial parents but not non-custodial parents. In addition, child support is paid from the payor’s after-tax income, with no deduction, and is tax-free to the recipient. The New Guidelines increase the financial burden on non-custodial parents trying to support a new family, causing hardship for the children of second families. Under the New Guidelines, the expenses of a second family may be used to defend against an increased support order, but may not be used to reduce an existing order. The New Guidelines do not require any accounting or accountability by the recipient of child support payments to ensure that payments are expended for costs actually incurred in raising the child, rather than for the sole benefit of the custodial parent.
The individual plaintiffs have filed affidavits setting forth the following facts. Plaintiff Steven Maynard pays child support in the amount of $1,100 per month pursuant to a temporary order of the Middlesex Probate and Family Court. Under the New Guidelines, his support obligation will increase by approximately $400 per month. Plaintiff John Rice pays child support and health insurance costs of $200 per week for his two children, who are with him approximately 15% of the time. Under the New Guidelines, his support obligation will increase to approximately $301 per week plus health insurance costs. Plaintiff Michael Fogg pays child support of approximately $96 per week for five children pursuant to an order of the Hampshire Probate and Family Court. Under the New Guidelines, his support obligation would increase to approximately $ 132 per week, and any increase would render him unable to afford his apartment unless he works additional overtime, which would reduce the time available to visit with his children.
Plaintiff Todd Sandahl is divorced and pays child support of $345 per week for his daughter pursuant to a January 23, 2008 Supplemental Judgment of Divorce. Under the New Guidelines, his child support will increase by approximately $50 per week, and his *168 ex-wife has expressed an intent to reduce the amount of time their daughter spends in Sandahl’s home below the one-third threshold. Plaintiff Shawn Gliklich is divorced and pays child support of $511 per week for his two children pursuant to a Judgment Nisi entered in the Essex Probate and Family Court. There is a current complaint for modification open in the Essex Probate and Family Court, and his support obligation will increase substantially under the New Guidelines. Plaintiff Paul Dionne pays child support of $225 per week for his two children pursuant to a Judgment of Divorce Nisi in the Essex Probate and Family Court. He has an open case in the Probate Court and under the New Guidelines, he will have to pay approximately $380 per week.
Count I of the plaintiffs’ complaint seeks a declaratory judgment that in promulgating the New Guidelines, the CJAM violated the plaintiffs’ due process rights, deprived them of equal protection, violated the separation of powers set forth in Article 30 of the Declaration of Rights, and imposed a tax in violation of Article 23 of the Declaration of Rights. Count II alleges that the New Guidelines violate equal protection by imposing burdens on unmarried parents that are not imposed on married parents, treating divorced parents differently from never married parents, treating the children of first and second families differently, and by having a highly disparate and negative impact on men. Count III alleges a violation of due process in the promulgation of the New Guidelines by the CJAM, the deprivation of property based on parental income rather than the actual cost of raising children, and the absence of any mechanism by which to challenge the applicability of the guidelines to a plaintiff s individual situation. Count IV alleges a violation of separation of powers under Article 30 in the legislative delegation of the guidelines to the CJAM and the imposition of a tax by the judicial branch in violation of Article 23. Count v. seeks a preliminary injunction[5] and Count VI seeks a permanent injunction against implementation of the New Guidelines.
DISCUSSION
I. RULE 12(b)(1) MOTION TO DISMISS
The defendants first move to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(1) on the ground that the plaintiffs lack standing to maintain a facial challenge to the New Guidelines.
A motion under Rule 12(b)(1) challenges the court’s jurisdiction over the subject matter of the complaint. Because standing to bring an action implicates subject matter jurisdiction, a motion to dismiss under Rule 12(b)(1) is an appropriate mechanism by which to challenge a plaintiffs standing. See Indeck Maine Energy, LLC v. Commissioner of Energy Resources, 454 Mass. 511, 516 (2009); Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). A Rule 12(b)(1) motion which is supported by affidavits or other materials contests the accuracy of the jurisdictional facts pleaded by the plaintiff. Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 711 (2004). The court may then consider affidavits, documents, and other materials outside the pleadings submitted by the parties in addressing the merits of the jurisdictional claim and resolving any factual disputes. Id.; Ginther v. Commissioner of Ins., 427 Mass. at 322 & n.6.
In order to have standing to attack the validity of a statute or regulation, a plaintiff must allege an injury within the area of concern of the statutory or regulatory scheme under which the harmful action has occurred. Indeck Maine Energy, LLC v. Commissioner of Energy Resources, 454 Mass. at 517; Mass. Assoc. of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 293 (1977); Professional Fire Fighters of Mass. v. Commonwealth, 72 Mass.App.Ct. 66, 74, rev. den., 452 Mass. 1105 (2008). Only a person who has himself suffered or is in danger of suffering legal harm can compel the courts to assume the difficult and delicate duly of passing upon the validity of the acts of another branch of government. Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Bd., 416 Mass. 635, 638 (1993).
The defendants contend that the individual plaintiffs lack standing because none of them avers that he has actually been required to pay increased child support under the New Guidelines. Nonetheless, as fathers with child support orders subject to modification at any time for changed circumstances, the individual plaintiffs have a direct, private interest in the enforceability of the New Guidelines, and are in danger of suffering a legally cognizable injury. For example, plaintiff Shawn Gliklich avers that there is a current complaint for modification open in the Essex Probate and Family Court, and that his support obligation will increase substantially únder the New Guidelines. He has thus alleged harm that is more than speculative, remote, or indirect in nature. See Professional Fire Fighters of Mass. v. Commonwealth, 72 Mass.App.Ct. at 75. Gliklich is more than a mere advocate disappointed in the administrative process; he is an injured litigant with standing to challenge the New Guidelines because of their direct impact on him. Cf. id. at 77. Regardless of whether the alleged harm to some of the other individual plaintiffs may be too speculative to confer standing, Gliklich’s standing permits this lawsuit to proceed.
The defendants further contend that Fathers and Families lacks organizational standing. An organization has standing to represent its members if the members have standing, the interests the organization seeks to represent are germane to the organization’s purpose, and neither the claim nor the relief sought requires the individual participation of its members. Associated Subcontractors of Mass., Inc. v. University of Mass. Building Auth., 442 Mass. 159, 164 (2004); Modified Motorcycle Assoc. of Mass., Inc. v. Commonwealth, 60 Mass.App.Ct. 83, 85 n.6 (2003).
*169 Fathers and Families must show that at least one of its members has individual standing. According to the complaint, only individual plaintiffs DiPalma and Maynard are members of Fathers and Families. Maynard’s affidavit alleges that he pays child support in the amount of $1,100 per month pursuant to a temporary order of the Middlesex Probate and Family Court, and that under the New Guidelines, his support obligation will increase by approximately $400 per month. Although Maynard does not aver that there is a pending modification action and it is unclear whether his child support order was less than three years old as of the effective date of the New Guidelines, in the view of this Court he has standing based on the realistic possibility that his child support payments will increase through application of the New Guidelines. Given the availability of modification at any time for changed circumstances, there is more than a remote or speculative chance that Maynard will suffer a legally cognizable injury from the New Guidelines.
Further, the interest in invalidating the New Guidelines as improperly promulgated, discriminatory, irrational, and excessive is germane to Fathers and Families’ purpose of working for child support reform. Finally, this action does not require individual member participation because the complaint seeks only declaratory and equitable relief. See Associated Subcontractors of Mass., Inc. v. University of Mass. Building Auth., 442 Mass. at 164; Modified Motorcycle Assoc. of Mass., Inc. v. Commonwealth, 60 Mass.App.Ct. at 86. The third prong of organizational standing is not met when conflicts of interest among members of an association require that members must join the suit in order to protect their own interests. See Maryland Highway Contractors v. Maryland, 933 F.2d 1246, 1252 (4th Cir.), cert. den., 502 U.S. 934 (1991). The defendants argue that because Fathers and Families’ membership consists of divorced, re-married, and never married fathers, its members have conflicting interests with respect to challenging certain aspects of the New Guidelines, such as the provision that allows divorced fathers to treat a portion of their child support obligation as alimony. However, all the members of Fathers and Families have a common interest in invalidating the New Guidelines as improperly promulgated and excessive. Accordingly, this Court concludes that this suit does not require individual participation so as to preclude organizational standing. Thus, Fathers and Families has met all three requirements for organizational standing and may pursue this facial challenge to the-New Guidelines.
II. RULE 12(b)(6) MOTION TO DISMISS
The defendants contend that all aspects of the plaintiffs’ challenge to the New Guidelines fail as a matter of law to state claims upon which relief can be granted. See Blixt v. Blixt, 437 Mass. 649, 653 (2002), cert. den., 537 U.S. 1189 (2003) (noting that facial challenge to constitutional validity of statute is weakest form of challenge and least likely to succeed). When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008); Berish v. Bornstein, 437 Mass. 252, 267 (2002). The court need not accept as true legal conclusions couched as factual allegations. Nguyen v. William Joiner Ctr. for the Study of War and Social Consequences, 450 Mass. 291, 292 (2007). To survive a motion to dismiss, a complaint must contain factual allegations which, if true, raise a right to relief above the speculative level. Iannacchino v. Ford Motor Co., 451 Mass. at 636. Dismissal under Rule 12(b)(6) is proper where a reading of the complaint establishes beyond doubt that the facts alleged do not add up to a cause of action which the law recognizes, such that the plaintiffs claim is legally insufficient. Nguyen v. William Joiner Ctr. for the Study of War and Social Consequences, 450 Mass. at 294; Pontremoli v. Spaulding Rehabilitation Hosp., 51 Mass.App.Ct. 622, 624 (2001).
Prior to the analysis of the plaintiffs’ constitutional claims, a brief historical overview of the Massachusetts child support scheme is warranted. In 1984, Congress mandated that as a condition of receipt of federal funding under Title IV-D of the Social Security Act, states must have an approved state plan for child support that meets certain federal requirements. See Hodges v. Thompson, 311 F.3d 316, 318 (4th Cir.2002), cert. den., 540 U.S. 811 (2003).
Each State, as a condition for having its State plan approved under [the Social Security Act] . . . must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts.
42 U.S.C. §667(a). Federal law requires that there be a rebuttable presumption that the amount of the award which results from application of the State’s guidelines is the correct amount. However, this presumption can be rebutted by a written finding that the application of the guidelines would be unjust or inappropriate in a particular case. See 42 U.S.C. §667(b).
Pursuant to these mandates, in 1986, the Massachusetts Legislature enacted a law which provided:
There shall be established a committee on Child Support Guidelines in compliance with Section 467 of the Social Security Act (P.L. 98-378). The committee shall be advisory to the [CJAM] and shall consist of fifteen members, seven of whom shall be appointed by the [CJAM], six of whom shall be appointed by the governor, at least five of whom served on the governor’s commission on child sup *170 port established by Executive Order on January twenty-eight, nineteen hundred and eighty-five, at least one of whom shall be a custodial parent and at least one of whom shall be a non-custodial parent, the commissioner of revenue, and the [CJAM] who shall be chairman. The committee shall report on such guidelines no later than January first, nineteen hundred and eighty-seven and shall file[ ] said report with the clerk of the house of representatives and the clerk of the senate. No sooner than ninety days subsequent to the filing of said report, the [CJAM] shall promulgate such child support guidelines for use by judges and hearing officers.
In determining support orders, in developing the recommendations for its report, the committee on child support standards shall consider all relevant social, economic, and legal principles. The committee shall be guided by the following principles: to minimize the economic impact on the child of family breakup, to encourage joint parental responsibility for child support, in proportion to or as a percentage of income, to provide the standards of living the child would have enjoyed had the family been intact, to meet a child’s survival needs in the first instance, but to the extent either parent enjoys a higher standard of living entitle the child to share that higher standard, to protect a subsistence level of income of parents at the low end of the income range whether or not they are on public assistance, to take into account the non-monetary contributions of the custodial and non-custodial parent, to minimize problems of proof for the parties and of administration for the courts, and to allow for orders and wage assignments that can be adjusted as income [increases] or decreases.
St. 1986, c. 310, §16A, codified at G.L.c. 21 IB, §15. The CJAM promulgated interim guidelines in 1987 and revised them four years later in 1991 as required by federal law. In 1992, the Legislature repealed G.L.c. 211B,§15as part of an Act Improving the Administration and Management of the Judicial System of the Commonwealth. See St. 1992, c. 379, §85. However, numerous statutes enacted both before and after 1992 recognize the validity of the child support guidelines promulgated by the CJAM and require their application. See, e.g., G.L.c. 119, §28(d) (temporary child support in connection with care and protection proceedings); G.L.c. 119A, §§2, 12 (child support enforcement); G.L.c. 208, §28 (child support after divorce); G.L.c. 209, §37 (child support when married parents are living apart); G.L.c. 209A, §3(e) (temporary child support as part of abuse prevention order); G.L.c. 209C, §§9(c), 20 (child support in connection with paternity action). As required by federal law, the CJAM has revised the child support guidelines every four years, and the last revision prior to the enactment of the New Guidelines occurred in 2006.
A. EQUAL PROTECTION
Count II of the complaint alleges that the New Guidelines violate the constitutional mandate of equal protection by having a disproportionate impact on men; imposing substantial burdens on unmarried parents that are not imposed on married parents; treating divorced parents differently from similarly situated parents who were never married; treating the children of first and second families differently; and treating custodial and non-custodial parents differently.
The standard of review for equal protection analysis is the same under the Fourteenth Amendment to the U.S. Constitution and the cognate provision of the Massachusetts Declaration of Rights. Tobin’s Case, 424 Mass. 250, 253 (1997); Dickerson v. Attorney Gen., 396 Mass. 740, 743 (1986). “The equal protection clauses do not protect against burdens and disabilities as such but against their unequal imposition. But the law cannot avoid making distinctions and therefore the gravamen of an equal protection challenge is that the distinction the law makes cannot be justified.” Opinion of the Justices, 423 Mass. 1201, 1232 (1996). Government must generally proceed by classifications and cannot legislate on a purely individualized basis. Id. Absent a showing that an enactment burdens a suspect group or fundamental interest, it will be upheld as long as it is rationally related to the furtherance of a legitimate State interest. Animal Legal Defense Fund, Inc. v. Fisheries & Wildlfe Bd., 416 Mass. at 640; Dickerson v. Attorney Gen., 396 Mass. at 743.
The plaintiffs contend that the New Guidelines are discriminatory because they have a disproportionate impact on men, who constitute 95% of the payors of child support orders. However, the New Guidelines are gender neutral on their face and make no distinction between the calculation of child support owed by mothers and fathers. A facially neutral law does not violate the federal and state equal protection clauses unless it is motivated by a discriminatory purpose. Fontneau v. Sandwich, 251 F.Sup.2d 994, 1005 (D.Mass. 2003). The plaintiffs’ complaint is devoid of allegations that the impact of the New Guidelines is traceable to a purpose to discriminate against men. Accordingly, this aspect of the plaintiffs’ equal protection claim fails as a matter of law.
The plaintiffs further complain that various provisions of the New Guidelines impermissibly impose on unmarried parents substantial burdens that are not imposed on married parents; treat divorced parents differently from similarly situated parents who were never married; and treat married parents differently from non-married and divorced parents. Because marital status is not a suspect classification, only rational basis review applies to these claims. See id. See also Califano v. Jobst, 434 U.S. 47, 53-54 (1977).
A party seeking to challenge the validity of an enactment under the rational basis standard of review bears *171 an onerous burden of proof. Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Bd., 416 Mass. at 640-41. A statute or regulation is presumed to be constitutional and will not be invalidated where any state of facts reasonably may be conceived to justify it. Id, at 641. Legislative solutions must be respected if the distinction drawn has some basis in practical experience, and there is no requirement that there be any record or findings in support of the classification. Murphy v. Department of Corn, 429 Mass. 736, 741 (1999); Pinnick v. Cleary, 360 Mass. 1, 28 (1971). In the absence of evidence that the Legislature harbored an illegitimate motive or had no rational reason to draw the distinction it did, the court must defer to the classification. Murphy v. Department of Corr., 429 Mass. at 741. “This deference is required even where the lines of distinction seem imprecise or improvident and where it appears that, had the line been drawn differently, a more just outcome would have resulted.” Id. In the areas of economics and social welfare, a classification does not violate equal protection merely because it is imperfect, is drawn without mathematical or scientific nicety, and in practice results in some inequality. Id.
The plaintiffs complain that the New Guidelines treat married and non-married parents differently in that they allow judges to order non-married parents to pay child support for children beyond the age of 18, including college expenses, while married parents cannot be ordered to support a child beyond age 18 or send them to college. The Guidelines permit the Probate Court to determine that child-related expenses such as extracurricular activities, private school, summer camp, and college are in the best interest of the child and are affordable by the parties, and to then allocate those costs to the parties on a case-by-case basis. “The Legislature has long recognized, as it may, consistent with our Federal and State Constitutions, that children whose parents are unmarried and live apart may be at heightened risk for certain kinds of harm when compared with children of so-called intact families.” Blixt v. Blixt 437 Mass. 649, 663 (2002). It is rational to conclude that in general, children of married parents have more financial opportunities for extracurricular activities, summer camp, and college than do children of non-married parents, such that the inclusion of these expenses in a child support order advances the best interests of the latter group of children. This difference in treatment is not irrational or arbitrary.
The plaintiffs next complain that the New Guidelines treat divorced parents differently from never married parents because divorced parents can re-characterize child support as alimony and receive a tax benefit, while never married parents cannot.[6] Foremost, the favorable treatment of child support as alimony is a creation of the U.S. Tax Code, not the child support guidelines. To the extent that the New Guidelines allow Probate Court judges to designate some or all of a child support order as alimony, it is rational to believe that providing a tax benefit to non-custodial divorced parents will further the important state interests of providing for the best interests of children and ensuring that the taxpayers are secondary to parents in meeting the financial needs of dependent children. See Department of Revenue v. Mason M., 439 Mass. 665, 669 (2003) (discussing the purposes of the child support scheme). That federal law does not afford never married parents the same tax advantage does not make the New Guideline’s incorporation of the benefit irrational or arbitrary so as to violate equal protection.
The plaintiffs further complain that the New Guidelines treat the children of a payor’s second family less favorably than the children of the payor’s first family, by requiring the payor to support the child of the first family at a certain level, leaving less money for the children of the second family, who have no court-ordered guarantee of a certain standard of living. As noted above, the Legislature has long recognized that children whose parents are unmarried and live apart “may be at heightened risk for certain kids of harm when compared with children of so-called intact families.” Blixt v. Blixt, 437 Mass, at 663. It is rational to believe that a child support order is necessary to ensure a reasonable standard of living for the children of a non-intact first family, but that children of a payor’s second family will be supported to a reasonable standard without explicit protection under the New Guidelines.[7]
Hence, even accepting as true all of the plaintiffs’ allegations and drawing all reasonable inferences in their favor, a reading of the complaint establishes beyond doubt that the facts alleged do not add up to a legally cognizable violation of the federal and state equal protection clauses. Count II of the complaint must be dismissed for failure to state a claim upon which relief can be granted.
B. DUE PROCESS
The defendants further contend that the plaintiffs’ due process claims, asserted in Count III of the complaint, fail as a matter of law. Under the state and federal due process clauses, the government may deprive a person of an interest in property only by due process of law. Opinion of the Justices, 423 Mass. 1201, 1229 (1996). See also Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Professional Ins. Ass’n, 418 Mass. 436, 443, cert. den., 513 U.S. 1058 (1994) (noting that state and federal procedural due process protections are identical). The plaintiffs allege that their due process rights were violated because the New Guidelines were promulgated by the CJAM rather than by the Legislature. The crux of this allegation appears to be that the plaintiffs would have had a more meaningful opportunity to participate in and influence the promulgation of the guidelines through the legislative process, which would also provide more accountability. A due process claim to a hearing and participation fails if a proceeding was regulatory, legis *172 lative, or political, as opposed to adjudicatory. Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Professional Ins. Ass’n, 418 Mass, at 444; Arthur D. Little. Inc. v. Commissioner of Health & Hosp. of Cambridge, 395 Mass. 535, 543 (1985). The plaintiffs have no constitutional right to a certain iype or degree of participation in the promulgation of the child support guidelines. See Bi-Metallic Investment Co. v. State Bd. of Equalization of Colorado, 239 U.S. 441, 445 (1915) (noting that where rule applies to more than a few people, it is impracticable that every one should have a direct voice in its adoption, and their rights are protected by their power, whether immediate or remote, over those who make the rule).[8] The plaintiffs’ true objection in this regard is that the promulgation of the New Guidelines by the CJAM violated not due process but rather, independent constitutional principles of separation of powers. The plaintiffs’ separation of powers argument is addressed infra.
The plaintiffs also allege that the New Guidelines violate due process because they are based solely on parental income rather than the actual cost of raising a child in Massachusetts. When faced with the claim that the operation and effect of a law as a whole violates due process, the overall test is whether the statute bears a reasonable relation to a permissible legislative objective. Pinnick v. Cleary, 360 Mass. 1, 14 (1971). The objectives of the New Guidelines are to provide for the best interests of children and to ensure that the taxpayers are secondary to parents in meeting the financial needs of dependent children. See Department of Revenue v. Mason M., 439 Mass, at 669. Basing the presumptive child support calculation on parental income rather than the demonstrated cost of raising a child is reasonably related to this objective. See id. at 674; Brooks v. Piela, 61 Mass.App.Ct. 731, 736-37, rev. den., 442 Mass. 1111 (2004) (noting that best interest includes not just child’s survival needs or reasonable expenses but also, when possible, maintaining standard of living child would have enjoyed if family remained intact). The plaintiffs emphasize that the relevant federal regulation requires that a state conducting a review of its child support guidelines at least once every four years “must consider economic data on the cost of raising children and analyze case data, gathered through sampling or other methods, on the application of, and deviations from, the guidelines.” 45 C.F.R. §302.56(h). Foremost, failure to comply with this requirement would not necessarily render the promulgation of the New Guidelines violative of due process. See U.S. v. Leahy, 434 F.2d 7, 11 (1st Cir. 1970); Commonwealth v. Trumble, 396 Mass. 81, 97 (1985) (noting that agency does not necessarily violate due process by failing to adhere to its own procedures). In any event, the plaintiffs’ complaint concedes that the Task Force considered various models, methods, and metrics for calculating the cost of raising children. Contrary to the plaintiffs’ characterization, the federal regulation requires only that economic data be considered, not that it form the basis of the state’s child support scheme. Accordingly, the plaintiffs cannot establish a due process violation by reference to 45 C.F.R. §302.56(h).[9]
Finally, the plaintiffs allege that the New Guidelines violate due process because they provide no mechanism by which to challenge their applicability to a plaintiffs individual situation. The basic due process test is whether the challenged enactment affords an aggrieved party the opportunity to be heard at a meaningful time and in a meaningful manner. Tobin’s Case, 424 Mass, at 254. In considering whether a challenged action satisfies due process requirements, courts must balance the private interest affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved. Gray v. Commissioner of Revenue, 422 Mass. 666, 675 (1996). It is undisputed that a payor has the opportunity to appear in Probate Court and challenge the application of the New Guidelines to his particular child support order. That the New Guidelines establish a presumptive child support award does not violate due process because the guidelines provide for deviation from the presumptive amount upon entry by the court of certain written findings. See Tobin’s Case, 424 Mass. at 255. See also White v. Laingor, 434 Mass. 64, 68 (2001) (discussing deviation). Further, a payor may appear in Probate Court and request a modification of a child support order due to changed circumstances. See Department of Revenue v. Mason M., 439 Mass. at 674 (discussing modification). “It is hard to imagine a more compelling state interest than the support of its children.” Gray v. Commissioner of Revenue, 422 Mass. at 675. In light of this compelling interest, the New Guidelines afford sufficient safeguards against erroneous deprivation of property to comport with the requirements of due process.
Thus, even accepting as true all of the plaintiffs’ factual allegations and drawing all reasonable inferences in their favor, a reading of the complaint establishes beyond doubt that the facts alleged do not add up to a legally cognizable violation of the federal and state due process clauses. Count III of the complaint must be dismissed for failure to state a claim upon which relief can be granted.
C. SEPARATION OF POWERS
Finally, the defendants move to dismiss Count IV of the complaint, which alleges that although 42 U.S.C. §667(a) expressly permits the creation of child support guidelines by the judiciary, the CJAM’s promulgation of the New Guidelines violates Article 30 of the Declaration of Rights, which provides: *173 In contrast to the United States Constitution, Article 30 explicitly provides for the strict separation of governmental power. Construction Indus. of Mass. v. Commissioner of Labor & Indust, 406 Mass. 162, 171 (1989); Opinion of the Justices, 365 Mass. 639, 640 (1974). The doctrine of separation of powers encompasses the principle that the Legislature cannot delegate the general power to make laws. Commonwealth v. Clemmey, 447 Mass. 121, 134 (2006); Construction Indus. of Mass. v. Commissioner of Labor & Indust., 406 Mass, at 171; Opinion of the Justices, 393 Mass. 1209, 1219 (1984). Nonetheless, an absolute division of the executive, legislative, and judicial functions is neither possible nor always desirable. Commonwealth v. Clemmey, 447 Mass. at 134; Gray v. Commissioner of Revenue, 422 Mass. at 671; Chief Administrative Justice of the Trial Ct v. Labor Relations Comm’n, 404 Mass. 53, 56 (1989). What cannot be tolerated under Article 30 is interference by one department with the functions of another. Gray v. Commissioner of Revenue, 422 Mass, at 671; Chief Administrative Justice of the Trial Ct. v. Labor Relations Comm’n, 404 Mass. at 56; New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Ct of Bristol 377 Mass. 404, 410 (1979).
*172 In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end that it may be a government of laws and not of men.
*173 The plaintiffs argue that the promulgation of child support guidelines is a non-delegable function of the Legislature. The determination of whether a particular delegation of authority violates Article 30 is a question of degree. Commonwealth v. Clemmey, 447 Mass, at 134-35; Construction Indus. of Mass. v. Commissioner of Labor & Indust., 406 Mass, at 171. The court considers whether the Legislature delegated the making of fundamental policy decisions, rather than just the implementation of legislatively determined policy; whether the delegating statute provides adequate direction for implementation in the form of guidance and standards; and whether the statute provides safeguards such that abuses of discretion can be controlled. Commonwealth v. Clemmey, 447 Mass, at 135; C&S Wholesale Grocers, Inc. v. Westfield 436 Mass. 459, 464 (2002); Construction Indus. of Mass. v. Commissioner of Labor & Indust., 406 Mass. at 171. If the policy and purpose of the Legislature are clearly expressed, the absence of detailed standards in legislation will not render it invalid as an unlawful delegation of legislative authority. The standards for action to carry out a declared legislative policy may be found not only in the express provisions of an act but also in its necessary implications. Chelmsford Trailer Park, Inc. v. Chelmsford, 393 Mass 186, 190 (1984).[10]
Here, the Legislature did not improperly delegate the making of a fundamental policy decision but rather, delegated to the CJAM the working out of the details of the child support policy expressed in St. 1986, c. 310, §16A. The Legislature was clear that the state child support guidelines were to incorporate and balance numerous articulated policy concerns, including the minimization of the economic impact on the child of family breakup, encouraging joint parental responsibility for child support, providing for children’s survival needs while enabling children to enjoy their parents’ higher standard of living where possible, protecting a subsistence level of income for low-income parents, and minimizing problems of proof for the parties and of administration for the courts. The Legislature also specified that child support should be in part a function of parental income, while taking into account the non-monetaiy contributions of both parents. Thus, the statute permissibly delegated to the CJAM the implementation of the Legislature’s child support policy, rather than the setting of fundamental policy.
In addition, St. 1986, c. 310, §16A provides adequate direction for implementation in the form of guidance and standards by specifically enumerating the policy considerations to be balanced.
It is dear from the statute what considerations should guide the CJAM in enacting child support guidelines. See Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 124 (1984).
Finally, the statute provides adequate safeguards such that abuses of discretion can be controlled. By specifying the membership of the Committee on Child Support Guidelines, the Legislature ensured that a broad range of interests would be represented in the process and prevented the concentration of authority in the CJAM. Further, the Legislature required that the committee’s initial report on the guidelines be filed with the clerk of the house of representatives and the clerk of the senate for review. The availability of a declaratory judgment action to challenge the validity of the New Guidelines also provides a safeguard against abuse of discretion by the CJAM. See Commonwealth v. Clemmey, 447 Mass, at 138. This Court concludes as a matter of law that the promulgation of the New Guidelines by the CJAM did not violate the principles of separation of powers articulated in Article 30 of the Declaration of Flights. Cf. Opinion of the Justices, 372 Mass. 883, 893 (1977) (noting that SJC has consistently upheld delegation of powers which “although partaking of some aspects of legislative functions, are so strongly implicated injudicial administration as to be properly exercised by the courts”).[11]
Finally, there is no merit to the plaintiffs’ allegation that the CJAM’s promulgation of the New Guidelines violates Articles 23 and 30 of the Declaration of Rights because the child support orders entered thereunder constitute taxation. Article 23 of the Declaration of Rights provides: “No subsidy, charge, tax, impost, or duties, ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature.” A tax is a revenue-raising exaction imposed through generally applicable rates to defray public expense. German v. Commonwealth, 410 Mass. 445, 448 (1991); Opinion of the Justices, 393 Mass. at 1216. A tax has also been *174 defined as an enforced contribution to provide for the support of government. See Emerson College v. Boston, 391 Mass. 415, 427 (1984). Child support is ordered not to raise revenue or support the government but rather, to advance the important goals of providing for the best interests of children and ensuring that the taxpayers are secondary to parents in meeting the financial needs of dependent children. See Adoption of Marlene, 443 Mass. at 501; Department of Revenue v. Mason M., 439 Mass, at 675. See also Adoption of Marlene, 443 Mass. 494, 498 (2005) (noting that child support scheme is grounded in public policy of the commonwealth, codified in various forms since 1692, that parents have legal obligation to support their children from birth).
Moreover, when the characterization of a monetary exaction is in doubt, the intent of the Legislature is relevant, as is the operation of the exaction. German v. Commonwealth, 410 Mass at 448; Emerson College v. Boston, 391 Mass. at 424. Nothing in the statutory child support scheme or the New Guidelines suggests an intent to use child support to raise general revenue for the commonwealth, nor does child support operate in such a manner in practice. This Court rejects the plaintiffs’ characterization of child support as a debt owed to the commonwealth. See Appleton v. Hopkins, 71 Mass. 530, 533 (1855) (in a broad sense, a tax may be viewed as a debt to the government). The fact that some payments under the New Guidelines are remitted directly to the commonwealth in Title IV-A cases to recoup public assistance payments made to recipients does not transform the basic nature of child support into a tax.
Thus, the plaintiffs’ claim that the promulgation of • the New Guidelines by the CJAM violates Article 30 fails as a matter of law, and Count IV of the complaint must be dismissed for failure to state a claim upon which relief can be granted. Given the legal insufficiency of the plaintiffs’ substantive claims, Count I for declaratoiy relief fails and must be dismissed without a declaration of the parties’ rights. See The Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 748 n.5 (2006); Wallenstein v. Board of Bar Examiners, 414 Mass. 1008, 1008 (1993) (when action for declaratoiy relief is dismissed under Rule 12(b)(6), declaratoiy judgment need not enter). Further, in light of the legal insufficiency of each of the plaintiffs’ constitutional challenges, Counts v. and VI of the complaint for injunctive relief fail as well.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motion to Dismiss be DENIED insofar as it seeks dismissal pursuant to Mass.R-Civ.P. 12(b)(1). It is further ORDERED that the defendants’ Motion to Dismiss be ALLOWED pursuant to Rule 12(b)(6).

On a Rule 12(b)(6) motion, the court may consider documents not attached to the complaint but which the plaintiffs had notice of and relied on in framing the complaint. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

In a Memorandum of Decision and Order dated April 23, 2009, this Court (Macdonald, J.) denied the plaintiffs’ motion for a preliminary injunction.

Although classifications based on illegitimacy are subject to heightened scrutiny, see Clark v. Jeter, 486 U.S. 456, 460 (1988), the provisions of the New Guidelines of which the plaintiffs complain do not treat children differently depending on whether they are a product of a marital or non-marital relationship. The Guidelines expressly require that the net after-tax amount of child support characterized as alimony for the purpose of the federal income tax deduction be no less than the amount of child support the court otherwise would have ordered. Cf. Department of Revenue v. Mason M., 439 Mass. at 672 (noting that child support order which treated non-marital child in manner grossly inferior to treatment of marital children was contrary to fundamental social policies set forth in guidelines).

Notably, the New Guidelines do take into account the needs of a payor’s second family by requiring the consideration of a payor’s other orders of support and reasonable voluntary payments for other children. The guidelines also permit the expenses of a subsequent family to be used as a defense to a requested increase in child support.

Notably, the public was given the opportunity to provide input into the New Guidelines at several public hearings, and the Report indicates that numerous changes to the guidelines were prompted by concerns raised by the public. Moreover, it is undisputed that Holstein directly represented the concerns of Fathers & Families through his service on the Task Force.

The plaintiffs appear to concede that this Court cannot infer from the regulation a private cause of action for its violation. See Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546 (1998).

Notably, despite Article 30’s stringent standard of separation of powers, it is rare for the Supreme Judicial Court to strike down a delegation of legislative power. See Opinion of the Justices, 365 Mass. 639, 647-48 (1974) (proposed bill to create electronic data processing and telecommunications department to operate electronic processing and telecommunication services needed by all branches of government would constitute improper delegation of legislative authority); Corning Glass Works v. Arm & Hope, Inc. of Danvers, 363 Mass. 409, 423 (1973) (non-signer provision of Fair Trade Law, G.L.c. 93, §14B, which gave manufacturers power to set minimum price at which any retailer could sell product, was unconstitutional delegation of legislative power to private parties); Opinion of the Justices, 334 Mass. 716, 720 (1956) (proposed bill to allow fish and game board to expend fund containing permit and license fees without appropriation would constitute improper delegation of legislative power to executive); Boston v. Chelsea, 212 Mass. 127, 130 (1912) (statute authorizing SJC to appoint commissioners to apportion county expenses among cities improperly delegated legislative power to judiciary).

Nor does promulgation of the New Guidelines by the CJAM violate more general principles of separation of powers under Article 30, insofar as the CJAM’s involvement in the guidelines process m no way interferes with or undermines the authority and proper functioning of the Legislature. See Gray v. Commissioner of Revenue, 422 Mass. at 671; Chief Admin. Justice of the Trial Ct. v. Labor Relations Comm’n, 404 Mass. at 56.